# HILL v. CHESAPEAKE & POTOMAC TELEPHONE COMPANY.

---

Telegraphs and Telephones; Negligence; Pay Station; Safety.

1. A telephone company which installs in a store a public pay telephone with a coin slot box, under an arrangement with the occupant of the store which is not shown to give him any rights in the instrument or its revenue, is bound to keep the approach to the instrument in a safe condition for use by the public thus invited to enter, and is liable to one injured when approaching the same to use it by falling through a trapdoor negligently left open in the floor, whether the arrangement amounts to a lease by the company of the space for the instrument, or whether the occupant is to be regarded as its agent

in the maintenance of the approach.    (Citing *Bell* v. *Central Nat. Bank,* 28 App. D. C. 580.)

2. A telephone company which occupies premises as a public pay station is bound to keep the same in a safe condition for use by patrons.

No. 2626.   Submitted March 4, 1914.   Decided April 6, 1914.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to the declaration in an action to recover damages for personal injuries, and, plaintiff electing not to amend, dismissing the action.                                  *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action of damages by plaintiff, Thomas D. Hill, appellant, against C. J. Conlon and the Chesapeake & Potomac Telephone Company for injuries received through the negligent opening of a trapdoor in the floor or premises of Conlon, while plaintiff was on his way to use the public telephone maintained by the telephone company in the rear part of Conlon's room.

The telephone company demurred to the declaration.   Demurrer was sustained and, plaintiff declining to amend, judgment was entered dismissing his action against the telephone company.

Later, he dismissed the action against Conlon, pending his appeal from the judgment for the telephone company.

The case presented is substantially this:   Conlon was in the possession of a storeroom in which he sold liquors and cigars. By some arrangement between them, the terms of which are not stated, the telephone company erected an apparatus in the rear part of Conlon's room for public service.   It was the ordinary slot machine.   The proposed user goes to the apparatus, signals the central office, drops the required coin in the slot, and obtains the service paid for.   Plaintiff knew of the situation of the telephone and had used it several times.   Desiring its use on March 6, 1913, he entered the room and on his way to the ap-

paratus fell into an open space in the floor, caused by the opening of a trapdoor therein, negligently opened and left unguarded.

*Mr. W. Gwynn Gardiner* and *Mr. Baline Coppinger* for the appellant.

*Mr. Henry B. F. Macfarland, Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon, Mr. Edward S. Bailey,* and *Mr. Horace G. Macfarland* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It may be assumed, as necessarily inferred from the allegations of the declaration, that Conlon was the owner or lessee of the premises, but not lessee of the telephone apparatus, which belonged to, and had been installed by, the telephone company for public use.   The telephone company collected its charges from users by means of the slot machine.   There was an implied invitation to the public to enter Conlon's premises and use the telephone.   Under these circumstances, Was it the duty of the telephone company to provide, or see to it that there was maintained, a safe passage to and from the telephone apparatus, and is it liable to plaintiff for injuries sustained through negligent failure to maintain a safe passageway ?

The question is a novel one.   Research of counsel and of the court has discovered ńo precedent decision directly in point. That there is no precedent is of little importance, for it is more than likely that the exact situation has never before occurred. The case of *Sullivan* v. *New York Teleph. Co.* 157 App. Div. 642, 142 N. Y. Supp. 735, relied on by appellee, has some bearing upon the question, but is not directly in point.   The facts in that case are that Barr occupied certain premises as a shoe store.   He made a request for the installation of a telephone on a blank provided for the purpose by the telephone company.   It contemplated that the company should keep an account of the

messages sent from the station, and render monthly statements thereof; that the tolls collected by the subscriber should be at rates prescribed by the company, and that the subscriber should conspicuously display such sign or signs as the company should furnish; that all signs, booths, or other equipment furnished should remain the property of the company and should be returned on demand in good order, reasonable wear excepted; that the company should have access to its property for the purpose of inspection, repair, etc.; that the contract might be terminated by either party at the end of six months on ten days' notice served in writing; that the subscriber, who collected the tolls, was to pay to the company 80 per cent of all tolls charged by it for messages from said station.

Plaintiff came in to use the telephone and was directed to it by Barr. While passing to the desk of the cashier to pay the charges, she stepped into an opening in the floor within a few feet of the telephone, caused by one of Barr's employees lifting a trapdoor leading to the basement, while she was using the telephone.

In the trial court plaintiff recovered judgment against both defendants. In the appellate division this was affirmed as to Barr, and reversed as to the telephone company. The court said: "It follows from these provisions that the defendant Barr had a direct interest in the use of the telephone, and had possession thereof as lessee or bailee. It was his duty, therefore, in inviting and permitting patrons to use the telephones, to exercise reasonable care to maintain his premises in a reasonably safe condition."

The telephone company was not liable, because it said: "It was not in possession of the premises,   *   *   *   and although it shared with the defendant Barr in the profits arising from *the use of the telephone,* it was in no manner interested with him in *the use of the premises,* which were in his exclusive possession, with the exception that the company reserved the right of access to the telephone for the purpose of repairs or removal. The trapdoor was not opened in connection with *the use of the telephone,* or in the business of furnishing telephone accommoda-

tions to the public, in which Barr and the company were jointly interested."

Without attempting any criticism of the conclusions of the learned court, it is sufficient to say that there is a considerable difference in the facts of that case and this. On the other hand, the appellant relies on the case of *Bennett* v. *Louisville & N. R. Co.* 102 U. S. 577, 579, 26 L. ed. 235, 236, 7 Am. Neg. Cas. 349. That case decides as in *Sullivan's Case,* supra, that the owner of premises who invites or induces others to come upon his premises for any lawful purpose is liable for any injury sustained through the unsafe condition of the premises or its approaches. See also *Bell* v. *Central Nat. Bank,* 28 App. D. C. 580.

If the telephone company had leased and occupied the building for use as a public station, it would clearly be within the rule stated. So, likewise, if it had leased from Conlon the use of part of his room for the maintenance of its station with an approach thereto, which it invited the public to use, it would be liable for negligent maintenance of the approach. But such are not the facts directly alleged in the declaration. Apparently, Conlon was the lessee or owner of the room, in which he carried on a business of his own, and with his assent, under some arrangement not averred, the telephone company installed therein its station for public service, fixing its charges and collecting the same through its slot box device. Conlon, apparently had no interest in either. He was neither the lessee of the station equipment, nor copartner with the company in its receipts. So far as the ordinary uses of the telephone were involved, it was no matter of necessary inquiry or concern of the public whether the telephone company was the owner or independent lessee of the room, or a subtenant of Conlon. The station was maintained for public use and profit therefrom.

As before stated, the telephone company, inviting the public to use it for hire, would be liable for the unsafe condition of its approaches, were it owner or lessee of the premises.

Can it, then, escape liability by opening its station in the

premises of another, inviting the public to enter and do business with it, and taking no care for the safety of its patrons?

In either case the purpose of the station and the invitation to use it are the same. Ought it then, by avoiding the direct maintenance of its station in a building or room of its own, and making some arrangement for the use of a room owned or controlled by another, to escape all liability for negligent maintenance of the necessary approach to its station by members of the public desiring to use it for lawful purposes? Could it do indirectly what it could not do directly?

No matter by what arrangement or contract it may have obtained the use of a space on or near the rear wall for the erection of its public service station, with the consequent right of its patrons to enter and use the portion of the floor necessary to go to and from the same, it ought to be held liable for negligence in the maintenance of said space. Keeping no special servant to exercise ordinary care in the maintenance of the safety of the approach, it may well be held to have devolved that special service upon Conlon, making him, to that extent at least, its servant to perform its necessary duties. So that, whether the telephone company leased the use of the wall and necessary floor space and negligently suffered others to render it unsafe for the users of its telephone; or whether Conlon was its servant for the purpose of reasonably safe maintenance of the same approaches, upon which it invited the public to enter, we are of the opinion that the telephone company is liable for an injury to one of the public entering for the lawful use of its service, occasioned by its own negligence or that of its servant or agent, whichever he may be called.

It was error therefore to sustain the demurrer; and the judgment is reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.  *Reversed.*