## COLUMBIA THEATRES, Inc., v. MENUET (QUILLEN, Intervener).

### No. 1628.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

Chas. A. Holcombe, of Baton Rouge, for appellant.

Johnson & Kantrow, of Baton Rouge, for appellee.

LE BLANC, Judge.

This suit originated in a provisional seizure of all the furniture, fixtures, goods, wares, merchandise, and other movable property contained in the New White House Cafe and Bar on the north side of Convention street, between Third and Lafayette streets in the city of Baton Rouge, for a rent claim due by the lessee, Gaston L. Menuet, to the lessor, Columbia Theatres, Inc. There is no controversy between these parties, the only question presently at issue being a claim by the intervener and third opponent, Leon Quillen, doing business as Gulf States Exhibit Company, that his movable property, consisting of two Novelty Slot Machines which were seized with all other movables, were not subject to seizure as they were in the leased building under a verbal contract of sublease with the principal lessee.

Under the provisions of article 2707 of the Civil Code, the right of pledge granted to the lessor for his rent affects those movables belonging to third persons, "when their goods are contained in the house or store, by their own consent, express or implied." Article 2706 provides that this right of pledge includes the effects of the undertenant, "so far as the latter is indebted to the principal lessee, at the time when the proprietor chooses to exercise his right." The intervener admits that at the time the two machines were seized, they contained the sum of $1.95 in cash, of which, under his alleged agreement, there was due the principal lessee, 25 per cent., or the sum of 49 cents, which amount he acknowledged owing the lessor under the provisions of the last article of the Code cited, and which he tendered in full settlement of any claim against him.

The lower court rendered judgment sustaining the intervener's contention that the agreement between him and the principal lessee under which the machines were placed in the establishment, constituted a contract of sublease between them, and that consequently they were not subject to the landlord's claim for rent, and that all that was due the latter was the amount tendered by the intervener. From that judgment the lessor, plaintiff herein, has taken this appeal.

The machines, described in the intervener's petition as Novelty Slot Machines, are, as we understand, mechanical selling devices, the mechanical parts being put in operation by electric current which is applied at the moment the person who patronizes them places his money coin in the slot and forces it in the body of the machine by pushing the lever in which the

slot is bored. A small crane in the inclosed cabinet in which the merchandise, consisting of novelties, is kept, delivers the object which the party playing the machine may, by chance, win. To operate the machine, no one comes in contact with it except the person who plays it. The dimensions of the machines are not given, but from a general description we would judge them to be about thirty inches wide and perhaps six feet in height. They are braced to the wall against which they stand and are weighted down with window sash weights placed in the bottom compartment. One of the machines, with the weights in it, weighs about 1,000 pounds. The electric current is supplied by means of an electric wire connected with a plug inserted in a receptacle in the room in which the machine is placed. Under the arrangement between the intervener and Menuet, the lessee of the café, the latter furnished the electric current necessary to operate the machines and received 25 per cent. of what they took in. The keys remained in the possession of intervener's agent, who opened them twice a week and settled with Menuet.

It is the contention of the plaintiff that the agreement between Menuet, its lessee, and intervener could not be a sublease because one of the three essential elements of the contract of lease, that is, the thing, was lacking. Civ.Code, art. 2670. The intervener's answer is that the thing leased was the floor space occupied by the machines.

We do not think it is disputed that a certain space in a part of a building, such as a room or hall, can form the object of a contract of lease or of sublease, provided it is clearly shown that it was the intention of the parties that such space was to be used for a definite purpose, and that the consideration paid was for its use. Contracts for the storage of commodities in warehouses, for example, have been held to be subleases. See Vairin & Co. v. Hunt, 18 La. 498, which is one of the cases relied on by the intervener. As appears from a reading of that decision, however, there was the very requirement we have just referred to, namely, that the consideration or rent paid by the owner of the goods was for the use of so much space in which they were stored. A lawyer may occupy desk space in another lawyer's office for which he pays a certain fixed price, and such an agreement may also result in a contract of lease or sublease, as it is

for the occupancy of such space that the consideration is paid. Therefore, to support his contention that his verbal agreement with Menuet to place his machines in the café constituted a contract of sublease of the space they occupied, intervener had to show that such space formed the object of their agreement, and that whatever share in the receipts of the machines derived by Menuet was in payment for that space. This, in our opinion, he has failed to show.

Whilst it seems to have been understood that the machines were to be used in the most conspicuous places in the café and where they were apt to attract the greater number of people who patronized the establishment, there was no specific place measured off, and besides, it was the understanding that if a certain spot might prove more profitable than another, the machines might be moved from place to place. Intervener, at first, would have it appear that they could only have been moved by mutual consent of himself and Menuet or his agent, but he later admits that whilst he would not have done so, he possibly could have moved them anywhere he wanted to, and in the event the original place selected turned out to be to his disadvantage, he could have moved the machine from the building altogether. Under such an agreement we do not think it could be said that the percentage of the gross receipts which Menuet obtained was in payment for any particular space in the building. The only testimony in the record tending to show that it was in consideration for a certain space comes from a statement of the intervener himself who, when asked, what, in return for the 25 per cent. was he to get, says: "A place near the front door." But on cross-examination, he says that the machines were put in the building purely on a percentage basis; that he was to get 75 and the other party 25 per cent. of the nickels put into them, and "that was the only agreement he had." Neither Mr. Paul Spillman, intervener's agent, nor Mr. Walter Hebert, Mr. Menuet's general manager who handled all the café business, the only two witnesses besides intervener, and both of them his witnesses, say anything about the percentage having been agreed upon in payment for any particular space the machines were to occupy. Mr. Hebert in rather characteristic fashion, expresses his idea of the agreement in answer to a question from intervener's counsel. He is

asked, "If the Court interprets your agreement as being a sub-lease, then it would have been entered into as a sub-lease?" and his answer is: "This was no sub-lease at all. That's the way it is done all over the country—put the machine in on a percentage basis."

Much stress is placed on the fact that the machines were braced against the wall and were heavily weighted down, this being an indication that their location was more or less permanent, and was the real object of the consideration Menuet received. But Mr. Hebert's testimony again comes in and weakens such an argument when he states that the purpose of bracing and weighting them down was to keep people from shaking them and loosening the prizes. "We didn't bolt them at first," he says, "we weighted them. Still the people would shake them so we decided to have them bolted and screwed to the wall."

A case presenting among others, a feature somewhat similar to the one before us, is that of Henry Rose Mercantile & Mfg. Co: v. Stearns, 159 La. 957, 106 So. 455, 458. In that case, Stearns, the principal lessee of certain premises in Shreveport, had agreed with Mongomery-Ward & Co., that it would ship him carload lots of implements which they handled, and that he would store them in his place of business and display them to prospective purchasers and to the public. Stearns had the right under the agreement to sell the goods shipped at certain prices and make his remittances in cash on the first of each month and at the same time furnish a report of all goods remaining on hand. It was also provided that the shipper of the goods, as well as Stearns, should have the right to sell any of the goods so shipped. The agreement did not contemplate that it should pay storage on the goods. While this agreement was being carried out, Stearns was sued for past-due rent and all property found on the premises, including that of Montgomery Ward & Co., was provisionally seized. The latter intervened, making several pretensions why its property was not subject to levy for the rent claim against Stearns, one of them being the same as made in this case, that it was a sublessee, and could only be held liable to the extent prescribed by article 2706 of the Civil Code. In passing on this contention, the Supreme Court said: "In the case at bar there was no agreement by intervener to pay defendant anything for the occupancy of the premises and no agreement to pay storage. To the contrary, the contract clearly contemplated that no rent or storage should be paid by intervener. Intervener, however, takes the position that the profits, which defendant was supposed to make from the sale of the goods, stand in lieu of a storage charge, and have the effect of making the contract one of storage or sublease. It may be said, however, that this position is untenable. The hope of making these profits cannot be said to constitute, or be the equivalent of, a price or consideration for storage, or for a sublease, nor was it intended that the hope, or even the profits, should be. The real object of the contract was not to provide for storage, but for the sale of the goods."

We might paraphrase much of that language and apply it to the situation presented in the case before us. There never was any definite agreement for the payment by intervener for the use of any particular space in the defendant's place of business nor for the storage of his machines, and the hope of receiving a certain percentage of what the machines took in, or even that percentage itself, cannot be said to constitute or be the equivalent of, a price or consideration for a certain space or for storage, or for a sublease, nor was it ever intended that either should be. The real object of the agreement was not any particular amount of space in the defendant's establishment, but the machines themselves, which automatically sold the merchandise, and, from which the defendant derived his profit in a certain percentage of the amount taken in. In what form of legal contract the agreement between the parties resulted, we are not concerned with. Suffice it to say that in our opinion, it was not one of sublease, the only form intervener can depend on to recover in this case.

Under our view of the case, we find it necessary to reverse the judgment of the lower court, and for the reasons herein stated, it is now ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby reversed, set aside, and annulled, and it is further ordered that there be judgment in favor of the plaintiff, Columbia Theatres, Inc., and against the intervener, Leon Quillen, doing business as Gulf States Exhibit Company, recognizing the lien and privilege of the said plaintiff, as lessor of the premises

812

known as the White House Cafe, situated in the city of Baton Rouge, on the two Novelty · Slot Machines· belonging to the said intervener, and found on the said premises at the time all movable ·property was provisionally seized, and further maintaining the said writ of provisional seizure under which they were seized and taken in possession by the sheriff of East Baton Rouge parish, and further ordering that they be sold under said writ and that from the proceeds thereof, plaintiff be paid on account of its claim for rent, by preference and priority over all other persons.

It is further ordered that intervener pay all costs of this proceeding.