204 So.2d 648 (1967)
A. G. GREEN and Mrs. Margaret E. Green, Plaintiffs and Appellants,
v.
SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY and Ray Rains, Defendants and Appellees.
No. 2177.
Court of Appeal of Louisiana, Third Circuit.
November 29, 1967.
Rehearing Denied December 28, 1967.
Writ Refused February 19, 1968.
*650 John P. Godfrey, Many, and John Makar, Natchitoches, for plaintiffs-appellants.
Watson, Brittain, & Murchison, by Daniel T. Murchison, Natchitoches, for defendants-appellees.
Before SAVOY, CULPEPPER and LEAR, JJ.
CULPEPPER, Judge.
The plaintiffs, A. G. Green, and his wife, Mrs. Margaret E. Green, bring this action for damages for personal injuries sustained by Mrs. Green. She was waiting for a long distance call on a coin-operated public telephone of the defendant, Southern Bell Telephone & Telegraph Company. The telephone was attached to the wall of the front porch of a country grocery store, owned by the defendant, Ray Rains. Mrs. Green leaned against a column on the front of the porch, located about five feet from the telephone. The column was loose at the bottom and swung out, causing Mrs. Green to fall from the porch to the ground. As a result of the fall she suffered the injuries complained of.
The defendant, Southern Bell Telephone & Telegraph Company, filed a motion for summary judgment which the trial judge sustained, dismissing plaintiffs' demands as to this defendant. From this judgment plaintiffs appealed.
The substantial issues on appeal are: (1) Is there any genuine issue of material fact which requires that the motion for summary judgment be denied and the case be tried on the merits?[1] (2) Was the telephone company negligent, the inquiry here being the nature of the duty owed by the telephone company to its customers and whether this duty was fulfilled?[2]
At the outset, we will state some of the general principles established by the jurisprudence interpreting our applicable summary judgment statute, LSA-C.C.P. Article 966. One who moves for a summary judgment has the burden of showing clearly that there is no genuine issue of material fact. Any doubt as to the existence of such an issue is resolved against the motion. The pleadings, depositions, affidavits and any other documents or evidence considered on the motion for summary judgment must be liberally construed in favor of the party opposing the motion and he must be given the benefit of all favorable inferences which might reasonably be drawn therefrom. The motion for summary judgment is not a substitute for trial on the merits and, in considering the motion, the court should not seek to determine whether it is likely that plaintiff will recover but rather whether there is any genuine issue of material fact. Roy & Roy v. Riddle, 187 So.2d 492 (La.App., 3rd Cir. 1966); Kay v. Carter, et al., 243 La. 1095, 150 So.2d 27; Smith v. Preferred Risk Mutual Insurance Company, 185 So.2d 857 (La.App., 3rd Cir. 1966); Aymond v. Missouri Pacific Railroad Company, 179 So.2d 460, 461 (La.App., 3rd Cir. 1965); Barron & Holtzoff, Fed. Practice & Procedure, Vol. 3, pages 138-157.
In view of the above stated principles of law, we will liberally construe in favor of the plaintiffs all favorable inferences which might reasonably be drawn from the pleadings, affidavits, etc. of all parties. The facts thus found are as follows: In 1959 Southern Bell entered into an oral agreement *651 with Ray Rains whereby it was permitted to install a coin-operated public telephone, known as a "boothette", on the front porch of Rains' grocery store. This "boothette" is simply attached to the wall and has a small panel on each side. There is no seat or door as in an ordinary telephone booth. The telephone company was allowed to select the location on the wall for the boothette and also for a sign reading "Public Telephone", which was attached to the same column that Mrs. Green leaned against. There was no express agreement between Rains and the telephone company as to who would be responsible for the upkeep of the premises in the vicinity of the boothette. Rains received 15% of the cash tolls collected, as compensation for allowing the telephone to be located on his premises.
On August 13, 1966 Mrs. Green placed a long distance call on the telephone. The operator instructed her to hang up and wait a few minutes until the call could be completed. While she waited, Mrs. Green walked to the front of the porch and leaned her back against the post. It was loose at the bottom, allowing it to swing out, thus causing Mrs. Green to fall backward from the porch to the ground.
Plaintiff alleges in her petition that the post had been loose for weeks, to the actual or constructive knowledge of Southern Bell. In its answer Southern Bell denies any such knowledge. An affidavit filed by the plaintiff, opposing the motion for summary judgment, states that the post is so located that the bumper of a pickup truck attempting to park in front of the store will strike the base of the post; that the post had been loose "off and on for at least four or five years."; and that the post had been repeatedly carved with initials and appeared to be in a weakened condition. Under the above stated rule that the pleadings and affidavits must be liberally construed so as to give the plaintiff the benefit of the most favorable inference which might be reasonably drawn therefrom, we must assume for purposes of the motion for summary judgment that Southern Bell knew the defective condition of the post.
Although we will discuss in more detail hereinafter plaintiffs' contentions that there are genuine issues of material fact, we have concluded there is no such issue. For, even construing the pleadings, affidavits, etc. in the light most favorable to the plaintiff, as we have done in stating the facts set forth above, there is no negligence on the part of Southern Bell under any legal theory advocated by plaintiffs.
It is conceded that the issue of the duty of care owed by the telephone company is res nova in Louisiana. The first theory advanced by plaintiffs is that Southern Bell has the same duty to its customers using this telephone that a storekeeper has to his patrons. Plaintiff cites Peters v. Great Atlantic & Pacific Tea Company, 72 So.2d 562 (La.App., 2d Cir. 1954) for the duty of the storekeeper. This case states that the duty of the storekeeper to his customers arises from our general tort statutes. LSA-C.C. Articles 2315-2316. He is not the insurer of the safety of his patrons. He is liable only where negligent. The duty required is that which "would be exercised by an ordinary prudent man under similar circumstances." He must keep the floors and passageways "in a reasonably safe condition for use in a manner consistent with the purpose of the premises."
Applying these general rules of negligence, it is obvious that the duty of care required of a storekeeper to his customers is greater than that owed by a telephone company to the users of a public phone. The circumstances of both the operator of the business and its customers are entirely different. The storekeeper is in possession and control of the entire premises at all times when customers are in the store. Hence, the ordinary prudent storekeeper is always present to make inspections of the premises for hazards. More can be reasonably required of him in this regard *652 than of a telephone company which could not be reasonably expected to keep employees standing by its public telephones at all times. Furthermore, the storekeeper is in control of the entire premises which he must keep reasonably safe, whereas a telephone company is at the most concerned only with the immediate vicinity of the telephone and certainly should not be liable except for those hazards immediately connected with the use of the telephone. And lastly, the customers in a store, whose attention is directed at the goods on display and who are walking up and down the passageways, are more likely to fail to see a hazard, than a person who is simply going to use a telephone.
Succinctly stated, the telephone company is not under the same duty of care as a storekeeper because it is not a storekeeper. The nature of its business and of its relationships with its customers differ substantially from those of a storekeeper. The ordinary reasonable telephone company is not the same as the ordinary reasonable storekeeper.
The next legal theory urged by plaintiff is that Southern Bell is a lessee of that portion of the premises necessary for the use of the telephone; and, as a lessee, Southern Bell should be held to the same duty of care as the lessee-operator of a place of public amusement. In explanation of this contention, it must be pointed out that, as a general rule in Louisiana, a lessee is not liable to persons injured while lawfully on the premises, except when the injuries are caused by the lessee's failure to make the minor repairs enumerated in LSA-C.C. Article 2716.[3] Generally, only the lessor-owned is liable for injuries caused by defects in original construction or neglect to repair the principal structure of the building.[4] However, an exception to these general rules has evolved in our jurisprudence concerning the lessee-operator of a place of public amusement. Such lessees are held liable not only for failure to make the minor repairs enumerated in LSA-C.C. Article 2716 but also for defects in the principal structure of the building.[5] The theory of these cases is that the lesseeoperator of a place of public amusement, such as a theater, has an implied contractual obligation, over and above those set forth in the Civil Code for lessees, to furnish its patrons a place which is reasonably safe from defects in the very structure of the building. Such a duty would probably include the defective post at issue here.
We have no difficulty in concluding that the duty of care owed by Southern Bell to its customers using this telephone, is not the same as that owed by the lessee-operator of a place of public amusement. Pertermitting the very interesting question as to whether Southern Bell is a lessee of that portion of the front porch of this store necessary for the use of the telephone,[6] *653 and assuming for the sake of argument that Southern Bell is a lessee, there is very little similarity between operating a theater, for instance, and maintaining a public telephone on the front porch of a country store. The control and possession exercised by Southern Bell over the premises is not comparable to that of a theater operator, nor is the use of the premises made by the customers comparable. All of the differences set forth above as to a storekeeper, apply even more strongly here. We find no justification for extending to this telephone company, the rule applicable to lessee-operators of places of public amusement.
Plaintiff argues next that since Southern Bell is a public utility, its duty of care should be the same as that required of public carriers for their passengers. Without stating in detail the nature of the duty of public carriers, suffice it to say that it is very high, the reasons for which have no application here. Patrons of a public telephone cannot be compared favorably with passengers on a public conveyance, who entrust their lives and safety to the operators thereof.
Plaintiff cites only one case from other jurisdictions. Hill v. Chesapeake & Potomac Telephone Company, 42 App.D.C. 170, 51 L.R.A.,N.S., 1072, Annotated Cases 1951D, 1085. In that case a coin-operated telephone was installed in the rear of a room used to sell liquors and cigars. The storekeeper received no percentage of the tolls and the nature of the agreement was unclear. Plaintiff was walking through the passageway to the telephone when he fell through a trap door, which had been negligently opened and left unguarded by the storekeeper, a Mr. Colon. The court did not classify the agreement between the telephone company and the cigar store operator as a lease, joint enterprise or otherwise, but it held for the plaintiff under the following reasoning:
"No matter by what arrangement or contract it may have obtained the use of a space on or near the rear wall for the erection of its public service station, with the consequent right of its patrons to enter and use the portion of the floor necessary to go to and from the same, it ought to be held liable for negligence in the maintenance of said space. Keeping no special servant to exercise ordinary care in the maintenance of the safety of the approach, it may well be held to have devolved that special service upon Conlon, making him, to that extent at least, its servant to perform its necessary duties. So that, whether the telephone company leased the use of the wall and necessary floor space and negligently suffered others to render it unsafe for the users of its telephone; or whether Conlon was its servant for the purpose of reasonably safe maintenance of the same approaches, upon which it invited the public to enter, we are of the opinion that the telephone company is liable for an injury to one of the public entering for the lawful use of its service, occasioned by its own negligence or that of its servant or agent, whichever he may be called."
On the other hand, defendant cites a similar case which reaches a contrary result. In Sullivan v. New York Telephone Company, et al., 157 A.D. 642, 142 N.Y.S. 735 (1913) a "public telephone pay station" was installed in a shoe store. The storekeeper kept 20% of the tolls. Plaintiff used the phone and, on leaving it, stepped into a trap door, a few feet from the telephone, which had been left open by one of the shoe store employees. The court held the shoe store operator was either the "lessee or bailee" of the telephone and that he had a duty to exercise reasonable care to the customers thereof. However, the court absolved the telephone company from liability under the following reasoning:
"There is, however, no basis for the recovery against the Telephone Company. It was not in possession of the premises (see Clussman v. Long Island R. R. Co., supra [9 Hun 618]); and, although it *654 shared with the defendant Barr in the profits arising from the use of the telephone, it was in no manner interested with him in the use of the premises, which were in his exclusive possession, with the exception that the company reserved the right of access to the telephone for the purpose of repairs or removal. The trapdoor was not opened in connection with the use of the telephone or in the business of furnishing telephone accommodations to the public, in which Barr and the company were jointly interested. It was opened solely in conducting the business of the defendant Barr as a dealer in shoes by one of his employes to obtain access to the basement, where shoes were stored with a view to exhibiting stock therein stored to a customer." (Emphasis supplied)
We express no opinion as to the correctness of either of these decisions from other jurisdictions. It may be that contrary results can be explained by the differences in the facts or in the substantive laws as to the duties of lessees, joint enterprisers, storekeepers, etc. We prefer to decide the present case on the basis that under no theory of law is the telephone company liable under the circumstances of this case.
We now turn to the contentions of the defendant, Southern Bell. It argues primarily that its duty is simply that of ordinary reasonable care under the circumstances, LSA-C.C. Articles 2315-2316. However, it urges that even if it be held a lessee of the portion of the premises necessary for the use of the telephone, which it denies, its duty as such a lessee is only to make minor repairs as set forth in LSA-C.C. Article 2716 and would not include the defective column. Thus Southern Bell argues that under any theory of law it has not been shown to be derelict in its duty. We conclude that defendant is correct.
There is a serious question as to whether Southern Bell was a lessee.[7] However, if it was a lessee of that part of the front porch necessary for the installation of the telephone and the use thereof by its customers, its duty as to repairs is limited to those under LSA-C.C. Article 2716, and clearly it had no duty to repair this post. The post, which had come loose from the bottom, either from deterioration or being struck by automobiles parking in front of the building constituted a defect in the building for which only the owner-lessor is responsible under LSA-C.C. 2322.
On the other hand, if the duty owed by Southern Bell to its customers was simply that of reasonable care under the circumstances, LSA-C.C. Articles 2315-2316, the circumstances here were such that Southern Bell owed its customers no duty to repair this post. Even if Southern Bell did owe its customers a duty of some type to furnish a reasonably safe place to use the *655 telephone, it is clear that such a duty does not extend to the repair of a defective post located five feet from the boothette. Under the facts which we assume, including the fact that Southern Bell had knowledge of the defective post, the ordinary prudent man would not foresee that a customer using the telephone would lean on the post or come in contact with it in any way in connection with the use of the telephone. And certainly, any duty on the part of Southern Bell to provide a safe place did not extend beyond the space necessary for the use of the telephone.
In order to be perfectly clear, we do not attempt to define here, because the issue is not before us, the extent of any duty of Southern Bell for maintenance of the floor and passageways which would necessarily be used by patrons of the telephone. The sole issue before us is whether Southern Bell had a duty to remove the hazard created by this defective post. Under no theory of law did it have such a duty.
As mentioned above, we will now discuss briefly plaintiffs' contention that there is a genuine issue of material fact. The first such issue urged by plaintiffs is that since Southern Bell had no express agreement with the store owner as to maintenance of the premises near the telephone this presents an issue of fact as to who was responsible for such maintenance. We cannot agree that this is a factual issue. In the absence of an agreement, the extent of Southern Bell's duty for such maintenance becomes a question of law. As stated above, there is no theory of law under which the telephone company is liable for the maintenance of this defective post.
The next issue of fact urged by plaintiff is whether Southern Bell had actual or constructive notice that the post was defective. As stated above, we have assumed for purposes of the motion for summary judgment that Southern Bell did have notice. Hence this issue is not material to a decision of the case.
Finally, plaintiff argues that there is a factual issue as to whether the defective post is a part of the premises which the telephone company should reasonably anticipate the public might use in connection with the use of the telephone. We find no issue of fact in this regard. The location of the post with reference to the telephone, the nature of its defective condition and all other facts as to its physical location and condition are undisputed. The question of the telephone company's duty, as regards this defective post, to persons using the telephone, is a question of law.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] LSA-C.C.P. Article 966.
[2] See Prosser or Torts, 3rd Ed., pages 146-148, for a general discussion of the necessary elements of negligence.
[3] Art. 2716. The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make:

To the hearth, to the back of chimneys and chimney casing.
To the plastering of the lower part of interior walls.
To the pavement of rooms, when it is but partially broken, but not when it is in a state of decay.
For replacing window glass, when broken accidentally, but not when broken either in whole or in their greatest part by a hail storm or by any other inevitable accident.
To windows, shutters, partitions, shop windows, locks and hinges, and everything of that kind, according to the custom of the place.
[4] LSA-C.C. Article 2322.

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
[5] Allen v. Shreveport Theater Corporation, 218 La. 1008, 51 So.2d 607, 24 A.L.R.2d 637 (1951) and the cases cited therein; see also the case note in 26 Tulane Law Review 103-107.
[6] This question is discussed in more detail hereinafter.
[7] The question has been presented in cases where a lessor's privilege was asserted against vending machines, slot machines, etc. owned by a third person but located on leased premises. In Columbia Theaters, Inc. v. Menuet, 169 So. 809 (La.App., 1st Cir. 1936) the "novelty slot machine" of a third person, left on the leased premises, was held not to be under a sublease agreement because the machine was not kept in a certain agreed space on the premises and hence there was no space or "thing" which was leased, as required by LSA-C.C. Article 2670. To the same effect see Pelican State Bank v. Webb, 175 So. 855 (La.App., 2d Cir. 1937) which involved a coin-operated victrola, a pinball machine and a cigarette vending machine. A case note in 11 Tulane Law Review 322 comments favorably on these two cases, but points out other grounds on which these agreements could possibly be classified as subleases. Riverside Realty Company v. Southern Bowling Corporation of Louisiana, 169 So.2d 228 (La.App., 4th Cir. 1964, writ refused) involved cocktail lounge and food and drink equipment of a third party on the leased premises. It was held that the agreement was a sublease because the owner of this equipment had the right to use the entire bowling alley for the purposes of selling food and drink; hence the requirement that a certain "thing" be leased was satisfied.