BOUTALL, Judge.
This case arises from damages to equipment at a building project. The plaintiff has appealed a summary judgment dismissing its suit. We affirm.
The plaintiff, Employers Insurance of Wausau (“Employers”), is insurer of a crane owned by Audubon Construction Company (“Audubon”). The defendants are Cajun Contractors and Engineers, Inc. (“Cajun”) and their insurer, North-West Insurance Company. Cajun was the general contractor for a construction job and subcontracted to Audubon the work of pile driving. The crane was damaged while Audubon’s operator assisted Cajun employees in attempting to free a dozer owned by Cajun that had become stuck in the mud. Employers, as Audubon’s subrogee, seeks reimbursement from Cajun of $34,422.00, paid for repairs to the crane, on the ground of Cajun’s negligence.
Cajun answered, denying negligence, and filed a motion for summary judgment on the premise that the indemnity clause of the contract between the parties provided that Audubon would assume the risk and indemnify Cajun for all damages to Audubon’s equipment, including damages caused by Cajun’s negligence. Summary judgment was granted on December 7, 1983, dismissing the plaintiff’s suit at its costs. Employers then filed this appeal.
The appellant assigns as errors: 1) the trial court’s finding that the contract between the parties for Audubon’s services provided that Audubon would indemnify Cajun for damages to Audubon’s property caused solely by the negligence of Cajun; and 2) the trial court’s granting the motion for summary judgment when there was a material issue of fact in dispute.
The contract in effect at the time of the damage contains the following clause:
“Article 7 — Subcontractor General Liability A. The Subcontractor assumes all risk for injuries and/or death of its employees and for damages to or destruction of its property, while on or about the project site covered under this agreement, or while traveling to or from office or other place of consultation, howsoever caused, growing out of, connected with or incident to the service performed or to be performed by the Subcontractor hereunder; and the Subcontractor hereby indemnifies and saves harmless the Contractor and the Owner, its officers, employees, agents and insurers from and against all claims, demands, liability, expenses, and causes of action connected therewith.”

Summary Judgment

We first take up the issue of whether there is a material issue of fact in dispute. The law regarding summary *612 judgment is summarized in Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981), as follows, at 1269:
“A motion for summary judgment should be granted where it is shown that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. La.C.C.P. art. 966; Cates v. Beauregard Electric Coop., 328 So.2d 367 (La.1976).
The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Mashburn v. Collin, 355 So.2d 879 (La.1977). And where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Mashburn v. Collin, supra; United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); 6 Moore’s Federal Practice, Section 56.15[1]; Green v. Southern Bell Tel. & Tel. Co., 204 So.2d 648 (La.App. 3d Cir.1968).”
The appellant argues that whether or not the work being performed by Audubon at the time of the accident grew out of, was connected with or was incident to service to be performed under the contract is a material question of fact. We disagree. The relevant facts are not disputed. The crane was on the project site. A Cajun employee asked the Audubon crane operator for help in dislodging a Cajun dozer from the mud on the site, and the crane operator came to his aid. The crane was damaged in the process. The question posed by the appellant is not a factual one but a legal question, the resolution of which depends on the court’s interpretation of the contract. Clearly, helping to recover a Cajun machine is not specifically listed as work to be performed by Audubon in the contract.[1] Returning to the subcontractor general liability clause, it is written in the broadest of language. The subcontractor assumes “all risk ... for damages to or destruction of its property, while on or about the project site ..., howsoever caused, growing out of, connected with or incident to the service performed or to be performed by the Subcontractor herewith. ...” The crane was on the building site, as required by the contract, to perform work under the contract. We can only conclude that Audubon’s coming to the aid of Cajun was an event “connected with or incident to” the service performed by the subcontractor. The contract could have been written to limit the risk only to specified contractual services to be covered but it was not. Accordingly, we hold that the trial judge was not in error in granting summary judgment on grounds that no material fact is in dispute.

Indemnity Agreement

We next consider the opposite interpretations of the indemnity provision of the contract argued by the appellant and appel-lee. Employers argues that Audubon undertook to indemnify Cajun only for Audubon’s negligent acts, as the contract did not specifically state that Audubon intended to indemnify for the negligent acts of the indemnitee, Cajun. On the other hand, Cajun’s position is that the plain meaning of the phrases “all risks” and “howsoever caused” indicate that the contract provides indemnification for damage caused by Cajun’s own negligence.
Indemnity agreements appearing in the jurisprudence fall into three classes: 1) those which state specifically that indemnity is provided for the indemnitee’s own negligent acts; 2) those which specifically exclude indemnity for the indemnitee’s neg *613 ligence; and 3) those which do not refer to the subject directly but contain language that may be construed as showing the parties intended indemnification for acts of negligence by the indemnitee. We have compared the provisions of other cases with the contract before us.
The case of Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977), falls into the first category. There an employee of a contractor was injured because of the negligence of the owner’s (Dow’s) engineers. The pertinent portion of the hold harmless agreement between Dow, the owner, and National Maintenance Corporation provided the following, at 1002:
“ARTICLE YI — INDEMNITY
6.1 Contractor assumes the entire responsibility and liability and will protect, indemnify and hold harmless Dow, its agents, servants, and employees from and against any and all losses, expenses, demands and claims made against Dow, its agents, servants and employees, by Contractor or its subcontractors, or any employee, agent or servant of Contractor or its subcontractors or any other third person because of injury or alleged injury (including death), whether caused by Dow’s negligence or otherwise, arising from any source....” [Emphasis omitted.]
In reversing the appellate judgment and remanding for trial, the Supreme Court held that the indemnity agreement between Dow and National Maintenance Corporation by its own terms included negligent acts of Dow’s agents, servants, or employees.
After remand for trial of the merits, the Polozola case was again appealed, inter alia, on the issue of indemnity. Polozola v. Garlock, Inc., 376 So.2d 1009 (La.App. 1st Cir.1979). That court held that National Maintenance and also a second maintenance contractor, H.E. Wiese, Inc., were both required to indemnify Dow and its employees from the consequences of their own negligence, under the terms of their respective contracts. The Wiese-Dow contract was of the third type mentioned above, i.e. one making no specific reference to the indemnitee’s negligence but containing language that may be construed as showing intent to indemnify. That contract reads as follows, at 1014:
“Contractor agrees to indemnify and hold harmless Dow, its officers and employees, from and against any and all claims and causes of action and all losses therefrom, arising out of or in any way related to the performance by Contractor or any subcontractor of Contractor of services hereunder, including without limitation any such claims for personal injury or death or property damage or destruction or urged by employees of Dow, employees of Contractor, any subcontractor, and employees of any subcontractor of Contractor, or all third parties whomsoever. This indemnity obligation of Contractor shall further extend to and include any and all claims made against Dow by any employees of Contractor, or any sub-contractor or any employee of any subcontractor, arising from any source while any such party is on premises owned, operated, leased or controlled by Dow.”
The court concluded that the Wiese contract did provide for indemnification of Dow for its own acts of negligence and said, at 1014, that:
“The Court concludes that each agreement must be interpreted according to its intended meaning, and that the absence of a specific reference to the in-demnitee’s ‘negligence’ is not decisive either way_” (Emphasis supplied.)
The court based its decision on four reasons among them that the language was broad and general, e.g., “any and all causes of action,” “arising from any source,” and that the parties could have specifically excluded coverage for Dow’s negligence if they had so intended. It would appear that the court’s reasoning in the second Polozola case is similar to that in Jennings v. Ralston Purina Company, 201 So.2d 168 (La.App. 2nd Cir.1967). There the court interpreted a contract as including the in-demnitee’s own negligent acts, although it *614 did not so state with specificity, because of the breadth of language. That contract reads as follows, at 174:
“Contractor shall protect, indemnify and hold harmless Company from any loss, damage, liability and expense for all injuries, including death to persons or damage to property directly or indirectly arising or growing out of the performance of this Contract except loss or damage that is recoverable under Company’s fire and extended coverage insurance. Contractor shall hold Company harmless from and shall answer and defend any action instituted against Company for any loss, damage or injury sustained by any person resulting from the performance of this Contract.”
The case of Daigle v. Lang, 377 So.2d 1384 (La.App. 4th Cir.1979), involved personal injuries. That court held that a contract limited indemnity for personal injury to the consequences of the contractor’s negligence acts alone by saying “arising out of his performance.” The agreement reads as follows, in pertinent part, at 1390:
“The Contractor binds and obligates itself to hold the Owner harmless from any claims of any nature whatsoever for personal injury or damage to property arising out of his performance of the work herein undertaken_” (Emphasis supplied.)
In the case before us, the appellant-insurer, Employers, urges that its agreement is similar to the provision covering personal injury in Daigle v. Lang, supra, and should be interpreted in its favor. Cajun, on the other hand, argues that the language is as broad as that in Jennings v. Ralston Purina Company, supra, and that by using the phrase, “howsoever caused,” Audubon agreed to assume all risks for damage to its own property while on the project. We find that the language in the Cajun-Audubon contract is all-inclusive and similar to the language in Jennings and in the second Polozola v. Garlock, Inc., supra. The assumption of risk of damage to Audubon’s property is followed by the second part of the indemnity provision in the Cajun-Audubon, stating:
“... and the Subcontractor hereby indemnifies and saves harmless the Contractor and the Owner, its officers, employees, agents and insurers from and against all claims, demands, liability, expenses, and causes of action connected therewith.”
We believe that this assumption of risk and hold harmless clause makes no sense unless it is interpreted to include acts of the contractor, as the subcontractor would have no need to release himself for damages to his own property from his own negligent acts.
Accordingly, for the reasons stated above, the judgment appealed from is affirmed.
AFFIRMED.

. Article 9 of the contract states that Audubon will perform the following functions:
"Furnish all labor, materials, and equipment necessary to drive all piles, both composite and wood, as required by the Plans and Specifications. Subcontractor is responsible for pouring concrete for all composite piles. General Contractor will furnish elevation mark for concrete.
“Subcontractor to drive all test piles, and provide and install pile loading apparatuses necessary to load test piles.”