537 So.2d 1144 (1989)
Buck GRESHAM and Lonnae Gresham, individually and as Administrators of the Estate of Their Minor Son, Jeffery Gresham, and Sandra L. Hardwick, Individually and as Administrator of the Estate of her Minor Son, Alton Hardwick, Jr.
v.
Thomas DAVENPORT, Jr., Commercial Union Insurance Company, Brian Williams, Sharon C. Brewer and American Hardware Mutual Insurance Company.
No. 88-C-1350.
Supreme Court of Louisiana.
January 30, 1989.
Charles A. Boggs, Robert I. Boudouin, Boggs, Loehn & Rodrigue, New Orleans, Phillip D. Myers, Ronald L. Davis, Jr., Theus, Grisham, Davis & Leigh, Monroe, for applicants.
Paul D. Wilkins, Columbia, Thomas Davenport, Davenport, Files & Kelly, Monroe, Harry D. Simmons, Bodenheimer, Jones, Klotz & Simmons, Shreveport, Thomas Hayes, III, Robert Baldwin, Hudson, Potts & Bernstein, Monroe, for respondents.
MARCUS, Justice.
Thomas Davenport planned to be out of town with the members of his law firm on a business retreat the weekend of October 29, 1983. Davenport's fifteen-year-old daughter, Molly, informed her father that she had made arrangements to stay with her friend, a neighbor of the Davenports. Molly had been living with her father since 1982 even though her mother retained legal custody. On this particular weekend, Molly had not made the arrangements to stay with her friend, but had instead planned to host a party at the Davenport home. For that purpose, she enlisted the help of eighteen-year-old Brian Williams, who purchased three cases of beer for Molly. On the evening of the party, James Ford, Molly's *1145 boyfriend, arrived at her house about 9:00 P.M. and drank approximately four beers. However, he and Molly had a fight and Ford left the party and went to the Spur station, a local teen gathering point. While at the Spur station, Ford encountered Jeff Gresham, Alton Hardwick and Timmie Lowery, the three of whom had told their parents they were going to a Halloween party which they never planned to actually attend. When the boys met with Ford at the Spur station, Ford had one beer which he shared with the others. Subsequently, Jeff Brewer drove up and the five boys decided to go to the Davenport home in search of beer. Brewer apparently had not been drinking any alcoholic beverages prior to arriving at the Spur station, having just returned from a football game he attended with his mother. Brewer, driving his mother's car, transported the boys to Molly's about 11:00 P.M. Once at the Davenport home, Ford and Brewer went inside, leaving Gresham, Hardwick and Lowery outside in the car. They eventually tired of waiting and decided to go inside also. They all got a beer, watched TV, talked or played pool. Brewer, Gresham, Hardwick and Lowery each drank approximately two beers, while Ford drank six in addition to the four he had consumed earlier that evening. The testimony during trial established that Ford was "tipsy" and that he broke a chandelier at Molly's while there the second time. About 11:30 the boys got concerned about their midnight curfews and decided to leave the party. Molly offered the boys beer, and Hardwick and Gresham took two six packs with them when they left.
Outside the Davenport home, Brewer and Ford argued about who would drive home. Brewer eventually prevailed and got in the car in the driver's seat. Ford sat in the front passenger seat, Gresham behind the driver, Lowery in the back seat middle position, and Hardwick in the back seat behind Ford. Neither Gresham nor Hardwick remember anything about the drive from Molly's house including the accident itself. However, it is uncontroverted that a few minutes after leaving Molly's party Jeff Brewer, for some reason, lost control of the car, crossed from the right lane across the left lane and crashed into a tree on the left side of the road. Brewer was killed instantly and Gresham and Hardwick suffered severe and permanent injuries. There was some evidence adduced at trial that Brewer was speeding immediately prior to the accident.[1] In addition, Ford told at least one of the boys after the accident that he grabbed the steering wheel to avoid some mailboxes on the right side of the road that Ford perceived Brewer was about to hit. The skid marks from the Brewer car began approximately ten feet before the mailboxes and continued downhill in a steady arc for 212 feet to the left edge of the road. The car then continued for another sixty-eight feet to collide with the tree.
Buck B. Gresham and Lonnae Gresham, the parents of Jeff Gresham, and Sandra L. Hardwick, the mother of Alton Hardwick, brought suit individually and as administrators of the estates of their minor sons[2] against Thomas W. Davenport, Jr., his homeowners insurance company, Commercial Union Insurance Company, Brian Williams, Sharon C. Brewer, and her liability insurer, American Hardware Mutual Insurance Company.
After trial, the judge found that neither Brewer's consumption of beer nor the excessive speed of the vehicle, if existent, was a cause of the accident. Rather, the cause of the accident was "grabbing the steering wheel and jerking the vehicle leftward" by Ford while under the influence of the beer he had consumed. Accordingly, he rendered judgment in favor of defendants and against plaintiffs dismissing plaintiffs' suit at their cost. Plaintiffs appealed. *1146 The court of appeal affirmed the trial judge's finding that Brewer was free from negligence and that Ford was the cause of the accident. The court, however, concluded that, based on the statutory scheme, specifically La.R.S. 14:91.2 and 14:91.3[3] and public policy, Molly Davenport had a duty not to provide beer to Ford and that this duty was breached. The court further concluded that the risk encountered, that Ford, though not driving, would act in an irresponsible manner, that is, grab the steering wheel and cause the accident, was within the duty owed and that this was a cause-in-fact of the accident. Because Molly's mother had legal custody, her father was not held vicariously liable, but his homeowner's insurance company, Commercial Union, was found liable for plaintiffs' damages which the court fixed at a total amount of approximately $822,000. Brian Williams was found not liable because, although he breached a duty in buying the beer, the risk encountered was not included in that duty.[4] Upon Commercial Union's application, we granted certiorari to review the correctness of that decision.[5]
The issues presented for our determination are: (1) whether Ford was at fault in causing the accident; (2) if so, whether Molly was at fault, and even if Molly was not at fault; (3) whether absolute liability applies in this case.
The standard of conduct required of persons in Louisiana in their relationships with one another as a basis of delictual liability is set forth in La.Civ.Code arts. 2315 and 2316.
Article 2315 provides in pertinent part:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Article 2316 provides:
Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.
Accordingly, under these articles the elements of a cause of action are fault, causation and damage. The conduct of which the plaintiff complains must be a cause-in-fact of the harm. After determining causation, the court must also determine what was the duty imposed on defendant, and whether the risk which caused the accident was within the scope of the duty. A breach of a duty on the part of the defendant which was imposed to protect against the risk involved makes the offender negligent under the above articles. Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985).
In the instant case, Ford testified that he reached for the steering wheel, although he contends he did so just prior to hitting the tree. Jeff Gresham testified that Ford told him that he grabbed the steering wheel to avoid hitting the mailboxes. Alton Hardwick testified that Ford told him that he grabbed the wheel. However, Hardwick was not sure whether Ford said he was trying to avoid the mailboxes or the tree. In addition, the skid marks began in the right lane approximately ten feet before the mailboxes on the right side of the road and continued downhill in a steady arc for 212 feet to the left edge of the road. From there, the car proceeded for sixty-eight feet to the point of impact with the tree. There was testimony by Ford himself that he drank about ten beers between the hours of 9:00 P.M. and 11:30 P.M. The expert testimony established that a person of Ford's weight who drank ten beers over a four-hour period would be legally intoxicated. There was testimony that Ford was "tipsy" when he left Molly's house. Moreover, we do not find that either *1147 Brewer's consumption of beer or the excessive speed of the vehicle, if existent, was a cause of the accident. Accordingly, under the circumstances, we find that the trial judge was not clearly wrong in concluding that Ford's fault was the cause of the accident.
Having found Ford at fault in causing the accident, we must decide whether Molly was at fault. Molly hosted a party in her father's absence knowing that her father would not approve. Molly arranged for beer to be available at the party. Furthermore, Molly offered the beer to Ford, a minor, and to other minors. Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The beer provided by Molly no doubt was a substantial factor in influencing Ford's actions which in turn caused the accident. If Ford had not been impaired by the beer he consumed at Molly's, he would not have grabbed the steering wheel and caused the accident. Accordingly, we find that Molly's conduct was a cause-in-fact of the accident.
Next, we consider whether Molly had a duty not to give beer to Ford. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Prosser and Keeton on The Law of Torts (5th ed. 1984). The court of appeal looked to the statutory law[6] and found that as a matter of public policy alcoholic beverages should be kept out of the hands of minors. From this finding, the court concluded that Molly had a duty not to provide beer to Ford. We disagree. The criminal statutes upon which the court relied prohibit only the purchase of alcoholic beverages by a minor or by an adult for a minor. While the statutes prohibit Molly, a minor, from purchasing beer, they do not address the situation where a minor (Molly) gave beer to another minor (Ford). Moreover, it would be difficult to interpret the statutes to extend to such a situation. However, even if they were interpreted to do so, criminal statutes are mere guidelines for the court. Boyer v. Johnson, 360 So.2d 1164 (La.1978). The imposition of a duty depends on a case by case analysis. Here, we are confronted with a fifteen-year-old teenager who provided beer to her sixteen-year-old boyfriend. Neither teenager was a novice to beer drinking, having both been drinking beer occasionally on the weekends for about a year. Under these circumstances, it would be doubtful that Molly had a duty not to serve beer to Ford. This is not to say that there could never be a case in which a minor may owe a duty to another minor not to provide him or her with alcoholic beverages.
Even assuming that Molly had a duty not to provide Ford with beer and that she breached that duty, we would nevertheless have to determine whether the particular risk falls within the scope of the duty.
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.
Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956) (emphasis in the original). In the instant case, the particular risk encountered by serving beer to Ford, a passenger in a vehicle, that he would grab the steering wheel and cause an accident cannot be easily associated with Molly's conduct in providing the beer. Moreover, there is no indication that such a *1148 risk was within the legislative intent in passing the statute prohibiting a minor from purchasing alcoholic beverages. Therefore, the particular risk was not within the scope of whatever duty that Molly, a minor herself, might have owed to Ford.
Plaintiffs finally contend that absolute liability should attach to Molly for her conduct in providing Ford with beer. However, this state has never implemented dramshop or civil liability statutes[7] against providers of alcoholic beverages. Instead we have chosen to apply the well accepted duty risk analysis to claims of injuries caused by the effects of alcoholic beverages. We rejected the imposition of absolute liability upon an alcoholic beverage retailer for the consequences of a patron's intoxication. Thrasher v. Leggett, 373 So.2d 494 (La.1979). Similarly, we now reject the plaintiffs' contention that absolute liability be imposed on a minor social host who serves intoxicating liquor to another minor.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the judgment of the district court denying plaintiffs' claims against defendants and dismissing their suit at their cost is reinstated.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
While I agree with some of the reasoning and admire the carefully crafted opinion authored by my colleague, Justice Marcus, I dissent from the conclusion.
Most of the reasons for my dissent are set forth in the excellent opinion by Judge Jones of the court of appeal, which decided that (1) the trial court did not clearly err in holding that the act of the intoxicated minor guest passenger caused the accident, (2) the trial court erred in not finding a duty on the part of the minor's social host not to serve intoxicating beverages to the point that he became inebriated, and (3) finally, the risk the drunk minor might grab the wheel of an automobile, causing a wreck, was within the ambit of the duty's protection.
On the risk aspect of the case, I have no difficulty at all in associating the serving of alcoholic beverages to a teenager with an ensuing automobile accident, whether the drunk is the driver or not. Perhaps the precise manner of occurrence may not be foreseeable, but the general scenario is not surprising or startling in the least.
My only difference with the analysis of the court of appeal is the holding that the father was not liable. Under Article 2318 of the Civil Code, the father and the mother are responsible for damages caused by their minor child "residing with them". The fact that the daughter's legal custody had been given to her mother does not negate the fact that she had been living with her father for perhaps a year. He is strictly liable for her torts under the Civil Code. Turner v. Bucher, 308 So.2d 270 (La.1975).
For these reasons, I respectfully dissent.
NOTES
[1] Ford and Lowery both testified that Brewer was travelling in excess of sixty miles per hour in a posted thirty-five mile per hour zone.
[2] While the suit was pending, both Jeff Gresham and Alton Hardwick reached the age of majority. By post trial motion and order, both have been substituted as plaintiffs to assert their own claims. The original plaintiffs remain to assert their parental claims which accrued before the young men reached majority.
[3] La.R.S. 14:91.2 provides in pertinent part:

It is unlawful for any person under the age of 17 to purchase any alcoholic beverage either of high or low alcoholic content.
This statute has been changed effective March 15, 1987 to make it illegal for a person under the age of seventeen to purchase or possess any alcoholic beverage.
La. R.S. 14:91.3 provides in pertinent part:
A. It is unlawful for any adult to purchase on behalf of a person under the age of eighteen any alcoholic beverage either of high or low alcoholic content.
[4] 524 So.2d 48 (La.App. 2d Cir.1988).
[5] 530 So.2d 554 (La.1988).
[6] See supra note 3.
[7] Some states expressly imposed civil liability on the commercial providers of liquor to intoxicated persons for resulting harm to third persons.