626 So.2d 880 (1993)
Kerry HOPKINS, et al., Plaintiff-Appellee,
v.
SOVEREIGN FIRE & CASUALTY INSURANCE COMPANY, et al., Defendants-Appellants.
Danny W. CRAIG, et al., Plaintiffs-Appellants,
v.
Clyde J. TAYLOR, et al., Defendants-Appellees.
Clyde J. TAYLOR, et al., Plaintiffs-Appellees,
v.
Danny W. CRAIG, et al., Defendants-Appellants.
Nos. 93-246 to 93-247.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Rehearing Denied December 16, 1993.
*882 Jack O. Brittain, Otis Edwin Dunahoe Jr., for Kerry Hopkins et al.
Bradford Henry Walker, for Sovereign Fire & Cas. Ins. Comp.
Peggy Dean St. John, Carolyn Jeanelle Smilie, for Allstate Ins. Co.
Stephen Thomas Collins, for Danny Craig et ux etc.
Steven D. Crews, John Haas Weinstein, for Clyde Taylor, State Farm and Gulf Coast.
Craig Owen Marcotte, for Larry and Brady Ueckert.
Kenneth Mascagni, for Off. S. Scott and City of Many.
Steven Randal Thomas, for Leon Sepulvado, et al.
Charles W. Salley, for Larue Cholvitee and Colonial Penn.
Ted David Hernandez, Bonnie Moore, for State of La., D.O.T.D.
Before DOMENGEAUX, C.J., and LABORDE and COOKS, JJ.
LABORDE, Judge.
This consolidated action concerns a head-on collision that resulted in severe injuries. Motions for summary judgment were granted in favor of several defendants: proprietors of the establishment that sold alcohol to a minor; the minor who purchased the liquor; the City of Many and a police officer of that community who earlier did not arrest two minors, one of whom would later be involved in the accident; and parties connected with one of the two vehicles involved in the accident.
Finding issues of material fact exist as to some of the claims, we reverse in part and affirm in part.

FACTS
On the morning of August 9, 1990, fourteen year old Shasitiy Larue and her seventeen year old cousin Janelle Craig received a telephone invitation to a party at the home of sixteen year old Lance Hopkins. Lance's parents were out of town on vacation.
The girls and other teenagers went to the Hopkins home. At some point, the teenagers decided to purchase liquor at the "Silver Bullet." About 12:20 p.m., Shasitiy entered the store on two separate occasions to purchase beer, wine, and "Brass Monkey." After purchasing alcohol alone the first time, Shasitiy began to leave when Brady Ueckert and Lance Hopkins pulled up in Chad Brandon's truck. Shasitiy went back into the store with the boys to purchase some more alcohol. On one of the two occasions, the clerk behind the counter at the Silver Bullet approved her purchase of alcohol although she was not yet eighteen years old. According to Shasitiy, the cashier looked at her driver's license and said: "`72, okay." Shasitiy's birthday is October 27, 1972.
Armed with these beverages, the teenagers returned to the unchaperoned home of Lance Hopkins and enjoyed them with their friends. Later, Brady drove Janelle to get something to eat in Many, Louisiana. Not long afterward, the Many Police Department received a complaint that persons in a maroon four wheel drive pickup had "flipped her *883 off" and could be found near the local Hardee's restaurant. Nine year veteran Many police officer Carl Scott encountered Janelle Craig and Brady Ueckert near the Hardee's. It is unclear whether both adolescents or only Brady were standing in the parking lot of the Phares and Lite Insurance Company in Many at about 6 p.m.
After speaking to Brady Ueckert and Janelle Craig, Officer Scott erroneously determined that the admittedly unlicensed Janelle Craig was driving, not Ueckert. According to the officer, for this reason he did not give Ueckert a field sobriety test notwithstanding his hunch that Ueckert may have been drinking. (Although the lad was not slurring his speech or walking irregularly, he was "red-faced.")
Officer Scott also spoke to Janelle Craig and got as near as three to five feet from her. Believing the fourteen year old spoke and behaved normally, he did not think she was under the influence of alcohol and did not give her a field sobriety test.
Faced with two occupants who appeared incapable of driving for different reasons, Officer Scott asked Jody Britt, who happened to be in the vicinity, to drive Ueckert and Craig away in Ueckert's vehicle. Officer Scott, who knew Britt to be a reputable young man and volunteer fireman, saw him drive the Ueckert truck out of town with Janelle Craig and Brady Ueckert. On the way to Lance's house, designated driver Jody Britt apparently saw Lance Hopkins, who agreed to drive Britt back to pick up the truck he had left in town. At this point, Brad Ueckert asked Janelle Craig to replace Britt in the driver seat, and the two returned to Lance Hopkins' house.
About an hour and a half later, Janelle announced that she was ready to go home. At approximately 8:10 p.m., a truck driven by Clyde Taylor and owned by Gulf Coast Machines and Fabrications, Inc., was heading west on Louisiana Highway Six when it collided with the Hopkins vehicle, which was travelling east on the same road. Ryan Taylor was a passenger in the vehicle driven by his father. The Taylor vehicle was pulling a boat trailer at the time of the accident.
Janelle Craig, Lance Hopkins and Brady Ueckert were riding in the Hopkins vehicle at the time of the accident. The driver of the truck is unclear. Ueckert testified Janelle was driving the vehicle. Due to her injuries, Janelle had no memory of the accident itself but claimed she was not driving.
Lance Hopkins and Brady Ueckert testified that the accident occurred in the eastbound lane of travel and that the Taylor vehicle caused the collision by coming into the eastbound lane. The accident occurred in a short straight stretch between the two curves. Lance Hopkins testified that his vehicle overtook Ms. Patsy Derrick's vehicle in a passing zone and had returned to its proper lane seconds before impact. He testified he could not see the Taylor vehicle until the Hopkins vehicle returned to its lane.
Lee Arthur testified by way of deposition, that he witnessed an accident in August of 1990 on Highway Six near Many, Louisiana. Mr. Houston testified he was headed west on Louisiana Highway Six when a white truck with a boat on a trailer passed him in a curve marked as a "no passing" zone. The truck pulling the boat completed the passing maneuver and then began to "wobble" or "fishtail" over the center line. This "fishtailing" occurred twice, and after the second time, the truck pulling the boat collided with the adolescents' blue pick-up truck.
Trooper Raymond Isgitt, the investigating officer, testified at his deposition that the brakes of the Taylor vehicle were applied in the wrong lane of travel. He further offered his opinion that the Taylor vehicle was attempting to avoid the Hopkins vehicle although he did not know whether the Hopkins vehicle had re-entered its lane of travel prior to the accident.

PROCEEDINGS BELOW
Several suits were filed as a result of the accident of August 9, 1990. Kerry Hopkins, individually and on behalf of Lance Hopkins, and Evelyn Hopkins filed suit to recover damages resulting from Lance D. Hopkins' injuries while riding in the 1982 GMC Sierra Classic pick-up truck owned by his parents and allegedly driven by Janelle Craig. Additionally, Clyde and Vivian Taylor filed suit *884 individually and on behalf of their minor son Ryan alleging that father and son were both injured in the accident. Allstate as the alleged insurer of Danny Craig was named a defendant in both suits. Other defendants in the Taylor suit include Leon, Ella, Tammy and Bud Sepulvado ("the Sepulvados"), proprietors of the Silver Bullet liquor store, and their insurer.
Finally, Janelle Craig's parents individually and on her behalf filed suit. Defendants in the Craig suit include State Farm Mutual Automobile Insurance Company, insurer of the Gulf Coast Machine & Fabrications, Inc. vehicle and its driver, Clyde Taylor; the City of Many and Officer Scott; and Shasitiy Lenee Larue's mother and her insurer, Colonial Penn Insurance Company.
Motions for Summary Judgment filed by several parties were granted by the trial court. The Motion for Summary Judgment filed by Clyde Taylor, State Farm, and Gulf Coast, was granted by judgment dated December 23, 1992; the one filed by the Sepulvados was granted January 13, 1993; and that of the Larues and Colonial Penn on December 28, 1992.

ASSIGNMENTS OF ERROR
On appeal the Craigs and their insurer assert the trial court erred in granting the Motions for Summary Judgment. Both assign as error the summary judgments granted in favor of the Sepulvados as well as State Farm, Gulf Coast and Clyde Taylor. The Craigs additionally argue that the trial judge erred in granting summary judgments for Shasitiy LaRue's mother, Hilda LaRue Cholvites, and her insurer, Colonial Penn; and the City of Many and Many police officer Carl Scott.
For reasons of clarity, we separately set forth general criteria concerning our appellate review of summary judgments, followed by our more specific applications of the law as it applies to each summary judgment rendered in these proceedings.

SUMMARY JUDGMENT
Summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages, provided the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled as a matter of law. LSA-CCP 966.
The analytical process properly used to consider whether to grant a summary judgment is outlined in Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). On a motion for summary judgment, the court first must determine whether the supporting documents presented by the moving party are filed in compliance with the Code of Civil Procedure and are sufficient to resolve all material fact issues in favor of the mover. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Indus. Sand and Abrasives v. L. & N.R. Co., 427 So.2d 1152, 1153 (La.1983); Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). If they are not sufficient from either an evidentiary or substantive legal standpoint, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party, who may no longer rest on the allegations and denials contained in his pleadings, to present evidence showing that material facts are still at issue. In deciding whether all material issues have in fact been disposed of, any doubt is to be resolved against the granting of summary judgment and in favor of trial on the merits. LSA-CCP arts. 966-967. South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991), writ denied, 596 So.2d 211 (La.1992); Evangeline Farmers Co-op v. Fontenot, 565 So.2d 1040, 1044-1045 (La.App. 3d Cir.1990).

THE SEPULVADOS
The Craigs' insurer alleges that the Sepulvados sold liquor to the minors in contravention of state law. LSA-R.S. 14:91. Allstate further contends that the Sepulvados' breach of their statutory duty not to sell alcoholic beverages to minors renders them liable for the accident.
*885 In response, the Sepulvados claim immunity due to minor Shasitiy's purchase and subsequent transfer of the alcohol to her minor friends. In addition, although Shasitiy was accompanied by Ueckert and Hopkins when she made the second purchase, the Sepulvados contend that there was no evidence of the boys' intoxication and thus no evidence that their intoxication contributed to the accident.
Having reviewed the record in its entirety and studied the laws applicable to this case, we reverse the summary judgment issued in favor of the Sepulvados. First, we find no legal basis for issuing blanket immunity for acquitting the Sepulvados of all liability for harm based solely upon Shasitiy Larue's purchase and subsequent transfer of liquor. It would be difficult for the Sepulvados to claim lack of knowledge in light of the volume and variety of alcoholic beverage she purchased cold and ready to drink in so short a period, some in the presence of other minors. The authority cited by the Sepulvados is legally inapposite or factually distinguishable. In Gresham v. Davenport, 537 So.2d 1144 (La.1989), the vendor's liability was never at issue. There, a minor who received beer from an eighteen year old was absolved for an accident caused factually by her giving beer to another minor who unpredictably caused an accident by reaching over from his passenger seat and grabbing the steering wheel.
Although the trial judge was silent as to his reasons, we infer that he granted summary judgment for the following reasons:
The trial court found as a matter of law that the legislative and jurisprudential stance against Dram Shop liability applies to absolve defendants of liability for harm to third persons caused by the effects of alcohol on a minor to whom defendants have sold alcoholic beverages. The court concluded that since Louisiana has no "Dram Shop" liability, defendants are not liable for the allegedly negligent actions of a minor to whom they sold alcoholic beverages.
Edson v. Walker, 573 So.2d 545, 546 (La.App. 1st Cir.), writs denied, 576 So.2d 34 (La. 1991). For the following reasons, we reverse.
The legislature was silent regarding the issue of "Dram Shop" liability until it enacted La.R.S. 9:2800.1 which provides that the consumption of alcohol, not the sale or serving of the alcohol, is the proximate cause of any injury occurring off the premises. This applies to injuries to either the consumer, who is over the age for the lawful purchase of alcohol, or to any third person injured by the consumer due to the effects of alcohol. This statute does not relieve the seller or furnisher of alcohol to minors from liability to minors or third persons injured by minors due to the effects of alcohol. The statute was effective June 6, 1986.
Id., at 546. (Emphasis added)
The Sepulvados cite no authority relieving retail stores of responsibility for selling alcoholic beverages to minors because no such authority existed before, Chausse v. Southland Corporation, 400 So.2d 1199, 1201-1202 (La.App. 1st Cir.), writs denied, 404 So.2d 497, 498 (La.1991), or after, see Edson, supra; David W. Robertson, Negligence Liability for Crimes and Intentional Torts, 67 Tul. L.Rev. 135, 155-156 (1992), enactment of LSA-R.S. 9:2800.1.
In Boudreaux v. Delchamps, Inc., 567 So.2d 700 (La.App. 3d Cir.), writs denied, 571 So.2d 629 (La.1990), a divided panel of this circuit affirmed a summary judgment awarded in favor of a grocery store that sold alcoholic beverages to a major while accompanied by minors: the retailer was not required to inquire as to whether the eighteen year old purchaser was going to violate the law by providing alcohol to minors. In Morris v. Nu-Way Beverage Co., 591 So.2d 1318 (La.App. 2d Cir.1991), writs denied, 592 So.2d 1342 (La.1992), the Second Circuit affirmed a summary judgment granted in favor of an insurer who denied coverage on the basis of an exclusion contained in a business liability policy for liability arising from the sale of alcoholic beverages to minors, reasoning that the public policy to protect minors from the dangers of alcohol is not so strong as to affect an insurer's ability to exclude *886 damages arising from an insured's sale of alcohol to minors.
Neither decision suggests that the dram law that became effective July 6, 1986, was designed to treat sales of liquor to adult and minor alike; to the contrary, Boudreaux, Morris, and the case it cites, Miller v. Benson, 556 So.2d 252 (La.App.2d Cir.), writ denied, 559 So.2d 1379 (La.1990), contrast the principles they stand for from the pronouncement we now make.[1] The Sepulvados admit that they would be liable had they sold the liquor to minor Shasitiy Larue and she been injured because the dram shop immunity found in LSA-R.S. 9:2800 does not protect those providing alcohol to minors, but we interpret this axiom to additionally protect certain third party victims as well. A vendor of alcoholic beverages who sells alcoholic beverages to a minor cannot automatically escape liability for acts of the immediate purchaser of those items. Likewise, liability cannot be avoided where the quantity of items so purchased by a minor makes it clear that those items are likely to be consumed by more than just the immediate purchaser.
We therefore reverse the summary judgment issued below notwithstanding the accident's occurrence several hours after the sale. We are not in a position to say precisely when the items illicitly sold by the Sepulvados were consumed, nor whether the alcohol so consumed played a part in the accident of August 9, 1990. These questions must be answered at trial.
The facts and circumstances under which a duty would be imposed in this particular case, the scope of the risk encompassed by the duty and causation are more appropriately determined by trial on the merits, not by summary judgment. Jarvis v. J.I. Case Co., 551 So.2d 61 (La. App. 1st Cir.1989), writs denied, 556 So.2d 56, 62, 63 (La.1990). Accordingly, the summary judgment is reversed.
Edson, at 547.
We similarly find no merit in the second and third arguments raised by the Sepulvados, both of which turn on the question of who was driving the Hopkins vehicle when the accident occurred. A fact is material if its existence or nonexistence may be essential to plaintiff's recovery; stated differently, facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. South Louisiana Bank, at 377. The question of who was driving the Hopkins vehicle could well turn out to be the central question presented by this multi-party dispute, particularly should it be determined that the Hopkins vehicle bears ultimate responsibility for the fateful accident.
Janelle Craig has no recollection of the accident itself, but swears that she was not driving prior to its occurrence notwithstanding her intoxicated condition. Her testimony is disputed by other occupants of her vehicle. Weighing such conflicting evidence has no place in a hearing on a motion for summary judgment even when it appears from the record that the nonmoving party may experience difficulty in achieving ultimate success, Simon v. Fasig-Tipton Co. of New York, 524 So.2d 788, 791-92 (La.App. 3d Cir.1988), writs denied, 525 So.2d 1048, 1049 (La.1988), as credibility determinations are best left to the trier of fact. Bercegeay v. Cal-Dive Intern., Inc., 583 So.2d 1181, 1183 (La.App. 1st Cir.), writs denied, 589 So.2d 1070 (La.1991); Ouachita Nat. v. Gulf States Land & Dev., 579 So.2d 1115, 1120 (La.App. 2d Cir.), writs denied, 587 So.2d 695 (La. 1991); Roger v. Dufrene, 553 So.2d 1106 (La.App. 4th Cir.1989), writs denied, 559 So.2d 1358 (La.1990).
On motions for summary judgment, any reasonable doubt must be resolved against the mover and in favor of trial on the merits, Indus. Sand and Abrasives v. L. & N. R. Co., supra, at 1153, and we do so here. The Sepulvados' second and third arguments hinge on the question of who was driving, a *887 disputed material fact whose resolution must await trial on the merits.

SHASITIY LARUE AND COLONIAL PENN
Our determination as to whether summary judgment was appropriate as to Shasitiy necessarily turns on substantive law: is a minor who illegally procures alcohol responsible for those whose subsequent actions give rise to questions of liability? If the question is answered negatively, then no damages flowing from Shasitiy's furnishing of beer can be assessed to her.
In Gresham v. Davenport, supra, this state's Supreme Court held under similar circumstances that a minor host was not legally responsible for damages even though her act of providing the alcohol constituted a cause in fact of the accident. Subsequently a guest passenger in a vehicle, the minor who was given the beer leaned over, grabbed and turned the steering wheel, causing the accident. The court noted that neither the minor who provided the beverage nor the one who consumed it were novices to beer drinking, and the criminal statute then in force was designed to guard against the purchase of beer by a minor or by an adult for a minor, not one to prohibit a minor from purchasing beer and then giving some to another minor. Id., at 1147. See also our discussion concerning the Sepulvados, supra.
The authority relied upon by the Supreme Court in Gresham then read in pertinent part as follows:
A. (1) It is unlawful for any person seventeen years of age to purchase any alcoholic beverage either of high or low alcoholic content.
LSA-R.S. 14:91.2 (emphasis added).[2] The court construed this language narrowly:
The criminal statutes upon which the court relied prohibit only the purchase of alcoholic beverages by a minor or by an adult for a minor. While the statutes prohibit Molly, a minor, from purchasing beer, they do not address the situation where a minor (Molly) gave beer to another minor (Ford). Moreover, it would be difficult to interpret the statutes to extend to such a situation.
Accordingly, the court refused to broaden the prohibition to impose upon minors the duty not to share beer with others.
Since Gresham, LSA-14:91 has been amended to additionally include the following prohibition:
B. (1) It is unlawful for any person seventeen years of age to possess any alcoholic beverage either of high or low alcoholic content.
. . . . .
C. "Possess" as used herein shall not include the handling, transport, sale, or service in dispensing of any alcoholic beverage by a person seventeen years of age pursuant to lawful employment by a duly licensed manufacturer, wholesaler, or retailer of beverage alcohol.
LSA-R.S. 14:91.1(B) as amended by Acts 1986, 1st Ex.Sess., No. 33, Section 1, effective March 15, 1987. The question thus becomes whether the statute's prohibiting minors from purchasing or possessing beer or wine imposes upon them a duty not to share it with their friends. We find that it does not, as we can find no logical basis for extending the reach of a minor's duty to third parties only on the basis of the added prohibition of possessing alcohol. Gresham held that purchasing did not equate to distribution, and we similarly construe the prohibition against possession. Although it is unclear from our reading of Gresham when a minor might owe a duty not to provide another minor with alcoholic beverages, we find no such duty existed here, where none of the minors were novices to drinking.
The legislature did not amend the law to legislative overrule Gresham; had it wished to do so, it could have spoken directly to the point. The amendment, offered solely to comport with the National Minimum Drinking Age Act, 23 U.S.C. § 158, contains the following sunset language:

"Section 3. This Act shall become effective on March 15, 1987. If before the *888 effective date of this Act, or during the period of this Act is in force, provisions of 23 USC 158, the National Minimum Drinking Age Act, have been repealed, have expired, or have been declared unconstitutional by the United States Supreme Court, then the provisions of this Act shall become null and void."

Had our legislature refused to pass the cited amendments, its failure to do so would have cost the State badly needed Federal transportation revenue.[3] In light of our holding that LSA-R.S. 14:91.1 was not intended to impose upon one minor a duty not to give beer to another, we affirm the summary judgment of the trial court.
Moreover, in light of the facts of this case, our result would be no different had we interpreted the statute to impose such a duty upon minors. Imposition of a duty depends upon a case by case analysis. As Professor Malone states in Ruminations on Cause-in-Fact, 9 Stanford L.Rev. 60, 73 (1956), all rules of conduct are designed only to protect some persons under some circumstances against some risks. Gresham, at 1147 (emphasis by Malone). In the instant case, the particular risk encountered by serving wine to Janelle Craig, an unlicensed individual, that she would drivewhile intoxicated no lessis no easier associated with Shasitiy's conduct in providing the wine than Molly's conduct in serving beer was to a passenger's altering a vehicle's course in Gresham.
Accordingly, we affirm the summary judgment which was rendered in favor of Hilda Larue, individually and as administratrix of Shasitiy Lenee Larue's estate, and Colonial Penn Insurance Company. She is absolved of liability regardless of who the driver was, and regardless of whether she had offered that person alcoholic beverages.

CITY OF MANY AND POLICE OFFICER SCOTT
Next, we affirm the summary judgment granted Officer Scott, whose failure to detain Janelle Craig and Brady Ueckert an hour and a half before the accident allegedly contributed to the accident, and the City of Many, his employer whom plaintiffs allege failed to properly train Officer Scott.
We see no problem with an officer protecting the public by giving the car keys of an intoxicated person to an available, lawful, sober driver who agrees to drive the intoxicated person home, thereby saving scarce prison space for those who present a greater danger to society, and adopt the substantive law expressed in Persilver v. Louisiana Dept. of Transp., 592 So.2d 1344 (La.App. 1st Cir.1991).
Where a special personal or individual one-to-one relationship arises between the police officer and an individual, liability may be imposed for the officer's breach of the duty thereby created toward the individual. Kendrick v. City of Lake Charles, 500 So.2d 866, 870 (La.App. 1st Cir.1986); Fusilier v. Russell, 345 So.2d 543 (La.App. 3d Cir.), writ refused, 347 So.2d 261 (La.1977). However, as a general rule, a police officer's duty to make arrests is owed to the general public and not to individuals; therefore, the breach of such a duty does not result in liability to an individual. Fusilier v. Russell, supra. See also Frank v. Pitre, 353 So.2d 1293, 1296 (La.1977) (sheriff's duty not to give prisoner weekend pass not designed to protect policeman wounded in barroom brawl) (see also Tate concurrence); Guillot v. State, through La. State Police, 364 So.2d 254 (La.App. 3d Cir.1978), writ refused, 366 So.2d 576 (La.1979) (duty to take drivers license from DWI convict does not encompass risks to third persons).
Turning to the facts of this case, we cannot say the trial court erred in granting summary judgment. The record does not substantiate a relationship between the officer and Janelle Craig sufficient to trigger the Kendrick analysis. Therefore Officer *889 Scott owed no duty to the young woman. Moreover, even if such a duty was owed, Officer Scott testified under oath that he had no reason to believe Janelle Craig was intoxicated; thus, even if she was in fact drunk he had no reason to arrest her. A police officer lawfully may arrest a person only if he has probable cause to believe that the person arrested has committed an offense. LSA-C.Cr.P. 213. Absent Officer Scott's knowledge that fourteen year old Janelle was intoxicated, the officer could not lawfully do so. See Persilver at 1350 and cites therein contained; see also State v. Moreno, 619 So.2d 62, 64-67 (1993). The facts of this case are distinguishable from those of Kendrick, where an officer knew of the tortfeasor's intoxicated state because she failed a field sobriety test he administered. See Persilver, at 1147.
Nor can we say that liability might attach as a consequence of the officer's failure to arrest young Ueckert. Although society may impose upon police officers a weightier obligation to keep a watchful eye on minors, we cannot see how the duty to arrest guest passenger Ueckert might encompass the risk that car keys would later be entrusted to an intoxicated driver by not one but two licensed drivers. Thus, even if Officer Scott had a duty to arrest Ueckert, there was no substantial relationship between the conduct complained of and the harm incurred; therefore, his breach of that duty was not a legal cause of the injuries resulting from the later accident. Sinitiere v. Lavergne, 391 So.2d 821, 825 (La.1980); Mack v. City of Monroe, 595 So.2d 353, 357 (La.App. 2d Cir.), writs denied, 599 So.2d 314 (La.1992); Nichols v. Nichols, 556 So.2d 876 (La.App. 2d Cir.), writ not considered, 561 So.2d 92 (La. 1990). We conclude that Officer Scott properly exercised his discretion in permitting Jody Britt to drive Craig and Ueckert away in Ueckert's car.

CLYDE TAYLOR, GULF COAST, AND STATE FARM
The cause of the accident is an essential element to all of the claims pending in this matter. Most if not all of the claims revolve around which driver was at fault on August 9, 1990.
Ms. Patsy Derrick, who the minors overtook seconds before the accident, stated that the accident occurred in the middle of the road and that at least some of the left rear portion of the minors' vehicle appeared to be in the oncoming lane when the collision occurred. Ms. Derrick also testified that the children might have reentered the oncoming lane after commencing a return to their own.
The Craig's insurer argues that the trial court erred in granting summary judgment in favor of State Farm, Gulf Coast, and Clyde Taylor. It alludes to Lance Hopkins' and Brady Ueckert's testimony that all of the Hopkins vehicle had returned safely to its lane prior to impact with the oncoming Gulf Coast truck operated by Taylor.
Taylor counters that, these declarations notwithstanding, it is undisputed that the Hopkins vehicle was operated in an unsafe manner and at an excessive speed. Thus the sudden emergency which presented itself relieved Taylor of any fault for the accident, entitling him to summary judgment.
All inferences to be drawn from subsidiary facts must be viewed in a light most favorable to the party opposing the motion, the Craigs and Allstate in this case. Burke v. Occidental Life Ins. Co. of Cal., 427 So.2d 1165, 1168 (La.1983); Mashburn v. Collin, 355 So.2d 879, 890 (La.1977); Durrosseau v. Century 21 Flavin Realty, 594 So.2d 1036 (La.App. 3d Cir.1992); Green v. Southern Bell Telephone & Telegraph Co., 204 So.2d 648, 651 (La.App. 3d Cir.1967), writ refused, 251 La. 859, 206 So.2d 711 (1968). According to Ueckert, had Taylor not panicked and pulled into the oncoming lane to avoid the accident no accident would have occurred. The two boys' testimony alone shows that there is a genuine issue as to a material fact, viz., whether Taylor was partly or wholly at fault for the accident and resulting damages. Therefore we are bound to assume for present purposes that Taylor's pulling into the children's lane was a substantial factor to the accident. If Taylor's entry into the children's lane prompted this last moment maneuver we could not say without a doubt that Taylor was free of fault.
*890 It could well be that Taylor will ultimately be found free of fault, but the doubts we have must be resolved against permitting the summary judgment to stand and in favor of a trial on the merits. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La. 1981); Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Durrosseau, supra, at 1038.

DECREE
For the foregoing reasons, we affirm the summary judgments rendered in favor of: defendants Hilda LaRue Cholvites, individually and on behalf of the minor, Shasitiy Larue, and Colonial Penn Insurance Company; the City of Many and Police Officer Carl Scott; and reverse those rendered in favor of: Leon, Ella, Bud and Tammy Sepulvado; Clyde J. Taylor, Gulf Coast Machine & Fabrications, Inc., and State Farm Mutual Automobile Insurance Company. Costs to be determined by the trial judge.
AFFIRMED IN PART; REVERSED IN PART.
DOMENGEAUX, C.J., concurs in the result reached.
NOTES
[1] Boudreaux goes to great lengths to explain that it was a major and not a minor who was sold alcohol. Morris and Miller clearly distinguish insurers' ability to avoid liability for damages resulting from sales of liquor to minors from vendors' inability to do so. See, e.g., Miller, at 256.
[2] LSA-R.S. 14:91.1 similarly banned seventeen year olds from purchasing alcoholic beverages, differing only with respect to penalties and criminal jurisdiction.
[3] The Federal legislation provides that states not passing legislation making unlawful the purchase and possession of an alcoholic beverage by persons less than 21 years of age would forfeit as much as 10% of Federal funding if such legislation was not effective by October 1, 1986, or by the tenth day following the first legislative session meeting after April 7, 1986, whichever came later. 23 U.S.C. § 158(a), as amended by Pub.L. 99-272, Section 4104(b).