**SECURITY TITLE GUARANTEE CORPORATION OF BALTIMORE**

v.

**UNITED GENERAL TITLE INSURANCE COMPANY.**

**Civil Action No. 95–1519.**

United States District Court, E.D. Louisiana.

March 28, 1996.

Malcolm A. Meyer, Monica Tufano Surprenant, Baldwin & Haspel, New Orleans, LA, for Security Title Guarantee Corporation of Baltimore.

Charles F. Seemann, Jr., Daniel Alan Smith, Deutsch, Kerrigan & Stiles, New Orleans, LA, Stephen G. Sklamba, Metairie, LA, for United General Title Insurance Company.

Patricia Turner Riddick, Baton Rouge, LA, for Louisiana Department of Insurance.

Harry A. Rosenberg, Brent Bennett Barriere, Laura Tiffany Hawkins, Phelps Dunbar, L.L.P., New Orleans, LA, for Stewart Title Guaranty Company.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court are two motions: 1) Security Title Guarantee Corporation's Motion for Summary Judgment; and 2) Stewart Title Guaranty Company's Motion for Summary Judgment. For the reasons that follow, both motions are GRANTED.

**BACKGROUND:** Security Title Guarantee Corporation of Baltimore (a Maryland corporation) ("Security"), Stewart Title Guaranty Company (a Texas corporation) ("Stewart"), and United General Title Insurance Company (a Louisiana corporation) ("United General") are all title insurers who compete with one another in the Louisiana market. Each of them employed Charter Title, Ltd. ("Charter") as an agent. Charter was authorized to execute title insurance commitments and title insurance on behalf of Security, United General, Stewart, and other title insurers. In addition, Charter rendered certain closing services, through its closing attorneys, to various customers. In connection with these various responsibilities, Charter held premiums and other closing-funds in escrow accounts.

On December 12, 1994, Security sent a representative to Charter to conduct an informal audit for the purpose of determining why Charter had not been remitting premiums. Security terminated its agency relationship with Charter by letter on December 19, 1994. Two days later, on December 21, 1994, Security sent notice of this cancellation to the Commissioner of Insurance on a form provided by the Commissioner of Insurance. Stewart also sent a representative to perform an audit of Charter in December 1994. On December 30, 1994, Stewart sent a letter to United General advising of potential irregularities in Charter's escrow accounts. Stewart terminated its agency relationship with Charter on January 3, 1995.

Although United General, like Security and Stewart, was aware in December 1994 that Charter had not remitted premiums for several months, United General asserts that it was not concerned about Charter.[1] Consequently, unlike Security and Stewart, United General did not send an auditor to Charter until several days after receiving Stewart's letter, and did not terminate its agency relationship with Charter until January 12, 1995. Charter filed for bankruptcy protection on January 17, 1995, on which date deficiencies in Charter's escrow accounts amounted to approximately $1.7 million.

On May 15, 1995, Security filed this declaratory judgment action, alleging that United General had been making accusations (to the Commissioner of Insurance and others), suggesting that Security was somehow responsible for United General's losses in the Charter failure. United General filed a counterclaim against Security and a third-party claim against Stewart, seeking $1.3 million under theories of tort and unjust enrichment, plus $50 million punitive damages.[2] United General alleges that both Security and Stewart uncovered the escrow shortages through their December 1994 audits, but failed to inform either United General or the Insurance Commissioner of this when they terminated their respective agency agreements with Charter, thus causing United General to sustain greater losses than it otherwise would have suffered. United General asserts that Security and Stewart

---

1. *See* United General's Answer, Counterclaim & Third Party Claim & Demand for Trial by Jury, Paragraph 11.

2. In September 1995, this Court dismissed United General's claim for punitive damages.

are liable under theories of tort and unjust enrichment.

**ANALYSIS:** Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* This burden is not met by "metaphysical doubt." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). The Court must "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* The Court does not, "in the absence of proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*

Security and Stewart argue that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law as to both United General's tort claims as well as its claims of unjust enrichment.

**A.  TORT:** United General argues that it has established a cause of action against Security and Stewart under article 2315 of the Louisiana Civil Code. To recover under the general tort theory of article 2315, a plaintiff must establish the following: 1) that defendant's conduct was a cause-in-fact of the plaintiff's harm; 2) that the defendant owed a duty to the plaintiff; 3) that this duty was breached; and 4) that the risk and the harm caused were within the scope of protec-

tion afforded by the duty breached. *Roberts v. Benoit,* 605 So.2d 1032, 1041 (La.1991).

Stewart and Security argue that United General's tort claim must be dismissed because United General cannot establish an essential element of a claim on which United General will bear the burden of proof at trial—namely, that Security or Stewart owed a duty to United General. Alternatively, they argue that even if they did owe a duty, the harm to United General was not within the scope of the protection afforded by that duty.

■■■  **1.  Duty:** Whether or not a duty is owed to the plaintiff is a question of law. *Roberts,* 605 So.2d at 1043. "Simply put, the inquiry is whether the plaintiff has any law—statutory or jurisprudential—to support his claim." *Id.* United General does not allege the existence of any confidential or fiduciary relationship among the parties. On the contrary, these three companies were competitors. Each of them was aware, in December 1994, that Charter had been derelict in remitting premiums. Security and Stewart were concerned. United General, by its own admission, was not. United General has failed to point to any basis in statute or jurisprudence for finding, under these circumstances, a duty on the part of Stewart and Security to disclose to United General the results of their independent audits of Charter or to inform United General that they were terminating their respective agency relationships with Charter.

■■■  United General attempts to circumvent this lack of a duty by arguing that Security and Stewart owed and breached a statutory duty (pursuant to La.Rev.Stat.Ann. § 22:1114(B)(7)) to notify the Louisiana Commissioner of Insurance immediately of the reason why they had terminated their respective agency relationships with Charter. Ordinarily, insurers are required only to notify the Commissioner "in due course on forms prescribed by the commissioner of insurance stating the cause and circumstances of the termination." La.Rev.Stat.Ann. § 22:1114(B)(6) (West 1995). The forms provided by the Commissioner do not provide a space for specifying the reason for termination. However, if the termination is for

"any of the causes of R.S. 22:1117," the insurer must "notify immediately the commissioner of insurance." La.Rev.Stat.Ann. § 22:1114(B)(7) (West 1995). Section 22:1117 enumerates several prohibited acts, none of which are even arguably applicable here except, according to United General, Section 22:1117(E)(4), which provides that "[a]ny person found to have violated this Part shall be deemed to have engaged in unfair trade practices and shall be subjected to the penalties provided herein." La.Rev.Stat.Ann. § 22:1117(E)(4) (West 1995). From here, United General winds its way through the Insurance Code to Section 22:1115(C), which makes it a crime to "intentionally withhold[ ] or intentionally fail[ ] to timely remit premium payments, or ... knowingly convert[ ] to [one's] own use or benefit any monies belonging to any ... claimant under or relating to any insurance policy." La.Rev.Stat.Ann. § 22:1115(C) (West 1995).

Thus United General argues that Security and Stewart owed a statutory duty to immediately notify the Commissioner because the reason that they terminated their respective agency relationships with Charter, according to United General, was that they knew that Charter was "intentionally withholding" premium payments or "knowingly converting" monies belonging to a claimant in violation of Revised Statute § 22:1115(C). This argument must fail for two reasons.

First, the Court is unconvinced that a violation of § 22:1115(C) constitutes one of "the causes of R.S. 22:1117" for purposes of § 22:1114(B)(7). La.Rev.Stat.Ann. § 22:1114(B)(7) (West 1995). Section 1117 is captioned "Prohibited acts" and does, in fact, set forth an inventory of proscribed acts. For example, it prohibits: 1) paying persons not duly licensed as an agent, broker, or solicitor under Part 24 for services performed in Louisiana that effect any insurance contract on any insurable interest in Louisiana; 2) representing oneself to be an agent,

broker, or solicitor without conforming to the provisions of Part 24; and 3) collecting payment or effecting an insurance contract relating to any insurable interest in Louisiana for any insurer not authorized to transact business in Louisiana. *See* La.Rev.Stat.Ann. § 22:1117(A), (C)(1), (E)(1) (West 1995). Each of these clearly would qualify as one of "the causes of R.S. 22:1117." By contrast, subsection 22:1117(E)(4) (the aperture through United General seeks to squeeze 22:1115(C) into "the causes of R.S. 22:1117") does not proscribe any act or impose any standard of conduct. It is a penalty provision, specifying that any "persons found to have violated this Part [Part 24] shall be deemed to have engaged in unfair trade practices and shall be subjected to the penalties provided herein." [3] La.Rev.Stat.Ann. § 22:1117(E)(4) (West 1995). It is difficult, then, to conceive how § 22:1117(E)(4) could ever form the basis for an insurer's decision to terminate its appointment of agent.

United General's reading of § 22:1114(B)(7) would take the phrase "the causes of R.S. 22:1117" far beyond its plain meaning, affixing to it an expansive hidden meaning. United General argues that § 22:1115(C) should be included as one of "the causes of R.S. 22:1117" because it is contained in "this Part," as that term is used in 22:1117(E)(4). The term "this Part," as used in subsection 22:1117(E)(4), clearly refers to Part 24 of the Insurance Code, which governs "the qualifications and procedures for the licensing of insurance agents, insurance brokers, surplus line brokers, and insurance solicitors." *See* La.Rev.Stat.Ann. § 22:1111 (West 1995). Thus, United General's inventive statutory construction would absorb into "the causes of R.S. 22:1117" not only § 22:1115(C), but all of the provisions of Part 24. The notice provision of § 22:1114(B)(7) would require immediate notice not only for "the causes of R.S. 22:1117," as it expressly states, but also for any of the

---

**3.** Subsection 1117(E)(4) provides in its entirety: "Any person found to have violated this Part shall be deemed to have engaged in unfair trade practices and shall be subjected to the penalties provided herein. Additionally, any person found to have knowingly and intentionally violated any provisions of this Subsection

shall be guilty of a felony and shall be subjected to a term of imprisonment, with or without hard labor, not to exceed five years, on each count, and each day on which a violation of this Subsection occurs shall be considered a separate violation."
La.Rev.Stat.Ann. § 22:1117(E)(4) (West 1995).

causes of R.S. 22:1113, 22:1114, 22:1115, 22:1116, and 22:1118, all of which are contained in Part 24. This cannot have been what the legislature intended by "the causes of R.S. 22:1117."[4]

Second, even if the Court accepted United General's tour de force through the Insurance Code, which would render violations of § 22:1115(C) one of the "the causes of R.S. 22:1117" for purposes of § 22:1114(B)(7), United General has no evidence that Security or Stewart terminated their respective agency relationships with Charter because they knew that Charter was "intentionally withholding" premium payments or "knowingly converting" monies belonging to a claimant in violation of Revised Statute § 22:1115(C). Security and Stewart both state that the reason they terminated their respective agency relationships with Charter was that Charter was not promptly paying them the percentage of premiums owed to them, which dereliction was a violation of their respective contracts with Charter. If this is true, of course, then they did not owe a statutory duty to "immediately notify" the Commissioner, even under United General's theory. Although United General has produced no evidence to demonstrate otherwise, it nevertheless maintains that violations of § 22:1115(C) must have been the real reason for termination because both Stewart and Security discovered the escrow shortages in their December 1994 audits. However, genuine issue as to whether Stewart or Security discovered escrow shortages in December 1994 is a long leap from establishing genuine issue as to whether Stewart and/or Security learned that Charter was *intentionally* withholding premiums or *knowingly* converting funds, much less that such knowledge was the true reason for terminating their agency relationships with Charter.

■ **2. *Scope of the Duty:*** In addition to arguing that they owe no duty, Security and Stewart argue that, even if they did owe a statutory duty to notify the Insurance Commissioner, United General's losses (allegedly sustained during the few days in which United General continued to underwrite Charter policies after Stewart and Security had ceased to do so) are not within the scope of risk associated with that duty. The Court agrees.

Under Louisiana law, every "violation of a statute or regulation does not automatically, in and of itself, impose civil liability. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another." *Faucheaux v. Terrebonne Consolidated Government,* 615 So.2d 289, 292–93 (La.1993). The legal causation question, or "scope of protection" inquiry, "assumes a duty exists and questions whether the injury the plaintiff suffered is one of the risks encompassed by the rule of law that imposed the duty." *Roberts,* 605 So.2d at 1044. "There is no 'rule' for determining the scope of the duty." *Id.* "Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Id.* The Louisiana Supreme Court has described the task as follows:

> "All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule

---

**4.** The Department of Insurance, in its amicus curiae memorandum, also seems to take the position that "the causes of R.S. 22:1117" should be read to include prohibited acts other than those enumerated in § 22:1117. The Department's position is understandably based upon its need for information in its role as regulator of insurance. However, the question facing this Court is whether United General's strained reading of § 22:1114(B)(7) can serve as a basis for imposing civil liability on an insurer for losses sustained by a competitor insurance company. For the reasons stated above, it cannot.

Interestingly, the Department of Insurance does not suggest, as does United General, that Security's and Stewart's duty to give immediate notice stems from § 22:1115(C). Rather, the Department suggests that Security and Stewart should have notified the Commissioner because of Charter's failure to timely remit premiums in violation of Section 22:1115(A)(1)(e). It is not surprising that United General does not make this argument, for United General concedes that it too knew in December 1994 that Charter was failing to timely remit premiums. It simply was not concerned.

protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape." [5]

"In short, the scope of protection inquiry asks 'whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.'" *Id.* Stated another way, the question to be asked is "how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced." *Id.* at 1045. "Absent an ease of association between the duty breached and the damages sustained," legal fault is lacking. *Id.*

United General's argument for legal causation is as follows: If Security and Stewart had immediately notified the Insurance Commissioner that Charter was "intentionally withholding" premium payments or "knowingly converting" monies belonging to a claimant in violation of Revised Statute § 22:1115(C), the Insurance Commissioner immediately would have issued a cease and desist order, thereby physically preventing United General from underwriting Charter policies during the first week of January, thus lessening United General's losses. The Court agrees with Security and Stewart that, under the facts of this case, the ease of association between the alleged statutory duty and United General's alleged damages is a tenuous one and cannot support legal causation.

In this case, as in *Roberts v. Benoit*, the already attenuated ease of association is further weakened by United General's own conduct. *Roberts*, 605 So.2d at 1045. When Charter began failing to remit premium payments, Stewart and Security each acted to protect their interests by sending auditors to investigate. Although United General was also aware during this period of time that Charter was not remitting premium payments, United General did nothing. Even when United General received Stewart's letter informing United General of potential escrow irregularities, United General waited nearly a week before sending in its auditor and terminating its agency relationship with Charter. It is for these losses, allegedly sustained during the few days in which United General continued to underwrite Charter policies after Stewart and Security had ceased to do so, that United General seeks damages.

The Court finds that the duty to provide notice under § 22:1114(B)(7) does not extend to protect this plaintiff from this type of harm arising in this manner. As the Department of Insurance suggests in its Amicus brief, the clear purpose of Section 22:1114(B)(7) is to enable the Commissioner to take immediate action to protect the public when serious problems occur within agencies. It is the Department's position that the Commissioner should have been notified immediately of Charter's inability to pay premiums as soon as the insurance companies learned of this problem. *See* Amicus Brief at p. 5. Yet, all three of the insurers in this litigation were exactly situated in this regard. Each of them knew of the failure to remit premiums. The purpose of § 22:1114(B)(7) would be not furthered but thwarted if those who chose to investigate the problem were forced to compensate the one who chose to turn a blind eye. Clearly, for the Department of Insurance to receive the active assistance that it seeks,[6] insurers must be willing to act to protect their interests, to seek out answers that will substantiate or dispel their hunches or suspicions. Thus, while the Court expresses no opinion as to whether Stewart or Security should be subject to regulatory discipline for their alleged derelictions, it is the Court's opinion that, under the facts of this case, the purpose of § 22:1114(B)(7) would not be furthered by allowing United General to use the statute as a springboard for imposing civil liability on its competitors. Con-

---

**5.** *Roberts*, 605 So.2d at 1044 (quoting *Gresham v. Davenport*, 537 So.2d 1144, 1147 (La.1989) (quoting Malone, *Ruminations on Cause–In–Fact*, 9 Stan.L.Rev. 60, 73 (1956))).

**6.** *See* Amicus Brief, at p. 6.

sequently, the duty to provide notice under § 22:1114(B)(7) does not extend to protect United General from the additional losses that it allegedly sustained as a result of continuing to underwrite for Charter after Security and Stewart had ceased to do so.

 **B.** *UNJUST ENRICHMENT:* Security and Stewart argue that they also are entitled to judgment as a matter law on United General's claims of unjust enrichment. Under Louisiana law, the elements of unjust enrichment are: 1) an enrichment; 2) an impoverishment; 3) a connection between the enrichment and resulting impoverishment; 4) an absence of justification or cause for the enrichment and impoverishment; and 5) no other remedy at law available to plaintiff. *Baker v. Maclay Properties Co.,* 648 So.2d 888, 897 (La.1995).

Stewart and Security argue that "cause" clearly exists for their alleged "enrichment" (United General alleges that their losses would have been greater if Security and Stewart had immediately notified United General or the Insurance Commissioner). The Court agrees. As the court explained in *Baker v. Maclay Properties Co.,* " ' "[c]ause" is not in this instance assigned the meaning commonly associated with contracts, but, rather, it means that the enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee. A valid juridical act with the enrichee is essential to a finding of "cause." ' " *Baker,* 648 So.2d at 897 (quoting *Edmonston v. A–Second Mortgage Co. of Slidell, Inc.,* 289 So.2d 116, 122 (La.1974)). The payments that Stewart and Security received were pursuant to contracts that each of them had with Charter. United General offers no evidence to suggest that these payments were not made pursuant to contracts with Charter or that the contracts were in any way invalid. Accordingly, in the case of both Stewart and Security, the Court finds that the alleged "enrichment" finds its explanation in the terms of valid juridical acts between the "enrichee" and a third party.[7]

For the foregoing reasons, the Court finds that no genuine exists for trial and that Security and Stewart are each entitled to judgment as a matter of law on all claims asserted by United General.

Accordingly, IT IS ORDERED that the Motion for Summary Judgment filed by Security Title Guarantee Corporation and the Motion for Summary Judgment filed by Stewart Title Guaranty Company are hereby GRANTED.

---

**7.** In addition, it is clear that United General has a remedy at law—namely, seeking its money from Charter in the bankruptcy proceedings. Also, Charter could sue the alleged individual Charter officers, as Security and Stewart each have. *See Kilpatrick v. Kilpatrick,* 660 So.2d 182, 187 (La.Ct.App.1995) (unjust enrichment claim against co-heir must fail where plaintiff failed to seek reimbursement first against the estate).