676 So.2d 773 (1996)
Johnnie Lorene NELSON, Individually, and on behalf of Her Minor Children, John Andrus, Jr., Johnathon Andrus, Alysha Nelson, Whitney Nelson, and Timothy Lamont Nelson, Plaintiff-Appellant,
v.
Eva Roger TORIAN, Michael Torian, John Torian, III, Robert Torian, and ABC Insurance Company, Defendants-Appellees.
No. 96-176.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1996.
*774 Jennifer Willis, New Orleans, for Johnnie Lorene Nelson et al.
*775 Jill Marie DeCourt, New Iberia, for Eva Roger Torian et al.
Before COOKS, WOODARD and AMY, Judges.
AMY, Judge.
This lawsuit arises from plaintiff leasing a house owned by the defendants. Plaintiff sued defendants for injuries sustained by her five minor children from lead poisoning allegedly caused by lead paint present in the house owned by the defendants. The issue on appeal is whether the trial court properly granted summary judgment in favor of defendants. For the following reasons, we affirm.

DISCUSSION OF THE RECORD
On May 20, 1992, Johnnie Lorene Nelson entered into a lease with James Martin, who was acting as an agent for John G. Torian, II and Eva Roger Torian. The Torians leased a house they owned at 510 Bellot Street in Lafayette, Louisiana to Johnnie for $350.00 per month. Johnnie lived in the house with her five minor children: John Andrus, Jr., Johnathan Andrus, Alysha Nelson, Whitney Nelson, and Timothy Lamont Nelson.
In July 1993, Johnnie took her children to their physician for a routine check-up, including blood tests. Johnnie was then notified that her children had high levels of lead in their blood. The Torians' rent house was subsequently inspected by the Louisiana Department of Health and Hospitals [DOHH] who informed Eva Torian, by a letter dated July 15, 1993, that "the framework on the screen porch at the south side of the house, the walls in the restroom, all the outside window and door frames, the entrance and rear door, the outside walls and frame work on the wash house all had high lead readings." DOHH also ordered Eva to (1) remove all the lead paint and properly dispose of it before re-painting and (2) contact DOHH to inspect the house before re-painting to determine whether all of the lead-based paint had been removed.
On August 30, 1993, Johnnie, individually, and on behalf of her five minor children, brought suit against Eva Torian, John Torian, III, Michael Torian, Robert Torian, and ABC Insurance Company, the Torians' liability insurer. Johnnie was seeking damages for lead poisoning suffered by her children. Specifically, Johnnie alleged that (1) defendants were negligent; (2) defendants' actions breached the Louisiana Sanitary Code and the Louisiana Lead Poisoning Prevention Act; and (3) lead-based paint was a "defect" in the rent house and, as such, defendants were liable under La.Civ.Code arts. 2317, 2322 and 2695.
Subsequently, defendants filed a motion for summary judgment. John Torian, III, Robert Torian, and Michael Torian asserted that when their father, John, died, they became naked owners of his one-half interest in the rent house. However, they alleged that the property was under the exclusive control of their mother, Eva, and that they were not aware of any lead-based paint on the house until notified by DOHH in July 1993. Eva asserted that she was also not aware of any lead-based paint on the house until she was notified by DOHH nor had she applied any lead-based paint to the house. Further, Eva alleged that the lease contained an assumption of the liability clause and, therefore, she was not liable under La.Civ.Code arts. 2317, 2322 nor 2695.
On September 3, 1995, the trial court granted the defendants' motion for summary judgment. Regarding Eva's children, the naked owners of a one-half interest in the house, the trial court granted summary judgment and dismissed all claims against them. The trial court found that Eva's children, as naked owners, had no control over the house and, therefore, could not be liable under the tort claims. The trial court then stated that the only issue remaining was the liability of Eva, who had exclusive control over the house. At that point, the trial court noted that, usually, the owner of a building remains liable for any condition of the premises which presents an unreasonable risk of harm, even if it is leased to another. But, the trial court observed that Johnnie had, under the contract of lease, assumed responsibility for the condition of the house and cited La.R.S. 9:3221. As such, the trial court stated that, under La.R.S. 9:3221, unless Eva knew or *776 should have known of the lead-based paint on the house, she could not be liable to Johnnie. After reviewing the evidence, the trial court, in granting summary judgment in favor of Eva, stated in part that:
The defendant (Eva) has given sworn testimony that she knew nothing about the presence of lead in the premises nor did she have reason to know. She has declared that she has never read any account of the likelihood of lead paint in older houses and that she has never seen any of the publicity regarding this issue. The plaintiff has failed to come forward with any authentic evidence to counter these assertions by the plaintiff.
Johnnie appeals from only that part of the judgment dismissing Eva and asserts that the trial court erred when it (1) found that the phrase "knew or should have known" in La.R.S. 9:3221 only contemplates conditions that the owner knew or should have known existed at the time of the lease "to the exclusion of the lessee" and (2) determined credibility and subjective matters such as motive, intent, good faith or knowledge on a motion for summary judgment. Since both of Johnnie's assignments of error specifically question the propriety of the trial court's granting of summary judgment, we will address them together.

LAW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Mott v. Brister's Thunder Karts, Inc., 95-410 (La.App. 3 Cir. 10/4/95); 663 So.2d 233. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. Summary judgment should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover in favor of a full trial on the merits. Green v. State, Through DOTD, 93-1352 (La.App. 3 Cir. 5/4/94); 637 So.2d 170, writ denied, 94-1973 (La. 11/4/94); 644 So.2d 1061. Further, summary judgment is seldom appropriate when there is a question relating to subjective facts such as intent, knowledge, motive, malice or good faith. Norcen Explorer, Inc. v. Kavanagh, 94-1058 (La.App. 3 Cir. 3/1/95); 651 So.2d 473. Notwithstanding, a motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. Penton v. Clarkson, 93-0657 (La.App. 1 Cir. 3/11/94); 633 So.2d 918; Hines v. Remington Arms Co., Inc., 522 So.2d 152 (La.App. 3 Cir.), writ denied, 524 So.2d 522 (La.1988).
To satisfy his burden on a motion for summary judgment, the mover must meet a strict standard by showing that it is quite clear what the truth is and that it excludes any real doubt as to the existence of any genuine issue of material fact. Burris v. LaSalle Parish Police Jury, 95-696 (La.App. 3 Cir. 11/2/95); 664 So.2d 680. However, in making this determination, the pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent are to be indulgently treated. Hopkins v. Sovereign Fire & Cas. Ins. Co., 626 So.2d 880 (La.App. 3 Cir.1993), writs denied, 93-2958 (La. 3/11/94); 634 So.2d 402; 94-0154 (La. 3/11/94); 634 So.2d 390. If the supporting documents presented by the mover are not sufficient to resolve all the material facts, the motion for summary judgment must be denied. Natchitoches Parish Hospital Service District v. Rachal, 94-995 (La.App. 3 Cir. 2/1/95); 649 So.2d 1152, writ denied, 95-0528 (La. 4/7/95); 652 So.2d 1349. On the other hand, if the mover's supporting documents are sufficient, the burden of proof shifts to the opposing party to present evidence that material facts are still at issue. Melancon v. Trahan, 94-26 (La.App. 3 Cir. 10/5/94); 645 So.2d 722, writ denied, 95-0087 (La. 3/10/95); 650 So.2d 1183. At that point, the "adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967. If the adverse party fails to respond, then the motion *777 for summary judgment shall be rendered against him. Id.
In a motion for summary judgment, facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success or determine the outcome of a legal dispute. Cormier v. Wise, 93-1434 (La.App. 3 Cir. 6/1/94); 638 So.2d 688. Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. Trahan v. State, Through Department of Health and Hospitals, 95-320 (La.App. 3 Cir. 10/4/95); 663 So.2d 242.
In the present case, Johnnie, the lessee, asserts that Eva, the owner/lessor, is liable for the injuries that her five children have suffered because of the lead paint on the house. The owner/lessor is generally liable for the condition of the leased premises pursuant to La.Civ.Code arts. 2317, 2322, and 2695.[1] But, the owner/lessor can shift responsibility for the condition of the premises, including liability for any injury caused by any defects to the lessee pursuant to La.R.S. 9:3221, which provides:
The owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
In Eva's motion for summary judgment, she attached a copy of the lease, which provided in part:
Lessee assumes responsibility for the condition of the leased premises. Lessor will not be responsible for any injury or damage to persons or property caused by any vices or defects of the leased premises, or the consequences thereof.
Therefore, Eva argues that she had shifted responsibility for the condition of the house to Johnnie pursuant to La.R.S. 9:3221. Eva then correctly pointed out that she could only be liable if she "knew or should have known" of the lead-based paint on the house.
At that point, Eva also attached to her motion her affidavit which stated:
1) That she is the widow of JOHN TORIAN and owns one-half interest in the property located at 510 Bellot Street, Lafayette, Lafayette Parish, Louisiana and further owns a usufruct over the additional one-half of the property.
2) That at the time the property at 510 Bellot Street was leased, JAMES "JIMMY" MARTIN, was authorized to enter into any and all lease agreements relative to the property and did so with petitioner, Ms. Nelson, on her behalf.
3) That she was not aware of the presence of any lead-based paint on the premises nor has she ever applied or caused to be applied any lead-based paint on the premised located at 510 Bellot Street until so notified by the Department of Health and Hospitals for the State of Louisiana on July 15, 1993.
4) That she took corrective action immediately upon learning of the presence of lead-based paint on the premise by hiring an environmental firm to remove said paint from the premises and complied with all requirements of the Department of Health and Hospitals Sanitation Division.
Additionally, Eva's deposition was submitted into the record by stipulation in reference to her motion for summary judgment. Eva testified that she was a legal secretary for her husband, John, until his death in November 1991. Eva further testified that she and John owned about fifty rental properties. She stated that they had acquired the house in question in 1987. She noted that it was an "older home" but that after a visual inspection, they had decided that the house was in "good condition." She testified *778 that John would draft the lease agreements; that she would perform all book work necessary for their rental properties; and that James Martin managed the rental properties.
Eva testified that when a tenant would move out of one of their rental properties, they would conduct a visual inspection and perform any repairs and clean-up needed before a new tenant would move in. Eva further stated that she was unaware that there was lead in old paint and that lead-based paint in old houses was a problem in the United States. She testified that she did not read magazines or news papers in general and did not watch "too much" television. She noted that the paint at the house was "fine." Finally, she stated that there were no other cases of lead poisoning in her other rental properties.
The deposition of James Martin was attached to Eva's motion for summary judgment. James testified that he was the manager of Eva's rental properties. He explained that his primary jobs were to provide any maintenance to the rental properties and collect the rent. James testified that when there was a changeover between tenants in one of the rental properties, he would conduct a visual inspection and fix anything that was broken and paint, if needed. He stated that the paint on the house at Bellot Street was not peeling. He testified that he first learned there was a problem with the paint when Johnnie informed him that her children had high levels of lead in their blood. He finally stated that there were not any other cases of lead poisoning in Eva's other rental properties.
Finally, Eva attached to her motion a copy of the Sanitary Code of Louisiana which was approved by DOHH in accordance with La. R.S. 40:2, 40:5, 40:1299.20 and 49:951 et. seq. Section 4:006 states that if paint is flaking, peeling or chipping on a house then that material shall be collected to determine whether that paint contains lead. Section 4:008 reveals that physical determination of lead in paint is determined by scientific testing by using equipment such as a radioisotope x-ray fluorescent analyzer.
Eva's supporting documents establish that (1) she did not know there was lead-based paint in the house until July 15, 1993 when notified by DOHH; (2) the paint at the house was not peeling; (3) a person cannot ascertain whether there is lead in paint by visual inspection, it can only be detected by scientific testing; (3) there were no other cases of lead poisoning in her other rental properties; and (4) she did not know that there was lead in paint and, further, that there was a problem with lead-based paint in the United States. We find that Eva's supporting documents were sufficient to indicate that she did not know nor should have known that there was lead-based paint on the house at Bellot Street. Thus, since Eva's supporting documents were sufficient to resolve all the material facts, the burden of proof shifted to Johnnie to show that a genuine issue of fact still remained for trial.
In Johnnie's opposition to summary judgment, she attached: (1) the July 15, 1993 letter to Eva from DOHH that informed Eva about the problem of lead-based paint on the house; (2) the July 27, 1993 letter to Eva from DOHH that listed the areas of the house that had lead-based paint; (3) an affidavit of Dr. Susan Andrews, a clinical psychologist who performed testing on Johnnie's children, which stated that Johnnie's children were suffering from lead poisoning; and (4) seventeen articles published in "popular magazines" from 1986 to 1993 (prior to the discovery of lead-based paint in the house) that "deal with the danger to children's health posed by old, deteriorating paint." Johnnie asserted that because of the "overwhelming public knowledge" of the threat of lead paint on some older houses that Eva should have known there was lead-based paint on the house at Bellot Street.
However, Johnnie failed to present specific facts in her supporting documents that would indicate that there is a genuine issue of material fact (whether Eva should have known there was lead-based paint on the house) for trial on the merits. Johnnie offered no countervailing specific facts to contradict Eva's supporting documents. Johnnie just asserted general allegations that Eva should have known about the lead-based paint, which was not peeling and was only detected through scientific testing, because of the "overwhelming public knowledge" of the danger of lead-based paint in older houses.
*779 We note the jurisprudence where summary judgment was granted in favor of owners/lessors because there were no genuine issues of fact concerning their liability, under La.R.S. 9:3221, for injuries suffered by lessees, who had assumed responsibility for the condition of the leased premises. See Dufrene v. Kaiser Aluminum and Chemical Corporation, 572 So.2d 771 (La.App. 4 Cir. 1990); Stephens v. Lafayette Insurance Company, 543 So.2d 1099 (La.App. 5 Cir.), writ denied, 546 So.2d 1226 (La.1989); Fontan v. Estopinal, 529 So.2d 1330 (La.App. 5 Cir.), writ denied, 533 So.2d 17 (La.1988); Cox v. Busch, 503 So.2d 715 (La.App. 3 Cir. 1987). Therefore, after reviewing the record, we conclude that the trial court properly granted the motion for summary judgment.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff-appellant, Johnnie Lorene Nelson.
AFFIRMED.
NOTES
[1] La.Civ.Code art. 2695 states:

The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in the case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided that they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.